IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JESSIE PERKINS, et al. | : | |
| | : | |
| v. | : | Civil Action No. DKC 23-1823 |
| | : | |
| SANDY SPRING BUILDERS, LLC, | | |
| et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this tort action involving the formation of an easement are the: (1) motion and amended motion to dismiss the complaint filed by Defendant District Title, A Corp. ("District Title"), (ECF Nos. 36; 56); (2) motion to dismiss the counterclaim filed by Plaintiffs and Counter-Defendants James Perkins ("Mr. Perkins") and Jessie Perkins ("Ms. Perkins") (collectively, "the Perkins"), (ECF No. 45); (3) motion to dismiss the complaint filed by Defendant Sandy Spring Builders, LLC ("Sandy Spring"), (ECF No. 50); and (4) motion to strike the jury demand filed by Defendants Compass DMV, LLC ("Compass") and Marc Fleisher ("Mr. Fleisher"), and joined by Sandy Spring (ECF Nos. 59; 60).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, all motions will be denied.

I.   **Background**[1]

In or around spring 2020, the Estate of Charles Sidney Faller, Jr. ("Faller Estate") sought to sell the property located at 10819 and 10821 Alloway Drive, Potomac, Maryland 20854 ("the Property"). (ECF No. 1 ¶ 8).  The Perkins allege upon information and belief that the Faller Estate retained Mr. Fleisher as its agent and Compass as its broker to represent it in the sale of the Property. (*Id.*).  Mr. Fleisher marketed the lot as a five-acre parcel on behalf of the Faller Estate and contracted to sell the Property to Sandy Spring in spring 2020.  (*Id.* ¶ 9).

Sandy Spring split the Property into two developable lots, Lot 40 (10821 Alloway) and Lot 39, (10819 Alloway).  (*Id.* ¶ 10). In or around May 2020, Sandy Spring and the Faller Estate entered into a Greater Capital Area Association of Realtors ("GCAAR") Sales Contract ("Sales Contract") whereby the Faller Estate promised to sell both lots to Sandy Spring.  (*Id.*).  Sandy Spring, however, decided that it did not want to develop the lots itself.  (*Id.*). Sandy Spring hired Mr. Fleisher and Compass to find assignees of the Sales Contract for both lots to avoid the double transfer and recordation and other closing costs that would occur if Sandy Spring settled on the Sales Contract with the Faller Estate and

---

[1] Unless otherwise noted, the following facts are set forth in the complaint and construed in the light most favorable to the Perkins.

then sold to buyers in a later transaction. (*Id.*). Sandy Spring endeavored to assign both lots and settle the purchase of both lots at the same time. (*Id.*).

In or around May 2020, the Perkins began discussions with Mr. Fleisher and Sandy Spring regarding the purchase of Lot 40. (*Id.* ¶ 11). While selling Lot 40 to the Perkins, Sandy Spring at essentially the same time sold Lot 39 to Amir Eyals and Jessica Eyals ("Ms. Eyals") (collectively, "the Eyals"). (*Id.* ¶ 12). Mr. Fleisher, the real estate agent, and Compass, the broker, acted as agents and brokers for all parties involved in assigning Lots 39 and 40 from Sandy Spring to the Perkins and the Eyals. (*Id.*). Mr. Fleisher and Compass were the sole agents and brokers involved in this transaction. (*Id.*).

In the process of selling Lot 40 to the Perkins, Sandy Spring and Mr. Fleisher told the Perkins that it was possible that an underground septic easement may need to be created on Lot 40 for the neighboring Lot 39. (*Id.* ¶ 13). In or around June 2020, the Perkins expressed concerns regarding the potential for the septic easement to have visible effects on their lot and whether the easement would affect the tennis court on the lot. (*Id.* ¶ 14). In response, Mr. Fleisher assured the Perkins that the easement would neither be visible nor affect the tennis court on Lot 40. (*Id.*). Mr. Fleisher also assured the Perkins that the easement

would be needed only if Lot 39 failed its sand mound and percolation tests. (*Id.*).

In June 2020, understanding that the septic easement would not visually or physically impact their lot above ground, the Perkins executed the assignment with Sandy Spring for the rights to purchase Lot 40 under Sandy Spring's Sales Contract with the Faller Estate for the purchase of the Property.[2] (*Id.* ¶¶ 15, 21). The assignment referenced the potential imposition of an underground septic easement on Lot 40 for the benefit of Lot 39 and attached a rendering of the septic easement as an addendum to the Sales Contract. (*Id.*). The rendering in the addendum depicted a two-trench underground system. (*Id.* ¶ 16). The assignment only included a rendering of the septic easement; it did not set forth any rights conveyed to the owners of Lot 39 by the septic easement. (*Id.*).

Lot 39 passed its sand mound tests in or around April 2020, and passed the percolation test in or around July 2020. (*Id.* ¶ 17). Mr. Fleisher told the Perkins that Lot 39 passed the percolation test, and the test results were submitted to the Montgomery County Department of Human Services for approval. (*Id.*). The Perkins understood that the septic easement would not

---

[2] The Perkins do not allege the name of the agreement in the complaint. Compass and Mr. Fleisher attach it ("the Assignment of Contract") to their reply to the Perkins' opposition to their motion to strike jury demand. (ECF No. 62-2, at 2).

be needed and, if ever needed in the future, would not affect their property above ground. (*Id.*).

While in discussions with the Perkins for the assignment and purchase of Lot 40, Sandy Spring and Mr. Fleisher were also in discussions with the Eyals for Lot 39. (*Id.* ¶ 18). In or around June 2020, the Eyals expressed to Sandy Spring and Mr. Fleisher that they had no intention of building a septic system on their own property because any septic system built on their own property would create mounds that they found aesthetically unappealing, and they believed said mounds would reduce the value of their property. (*Id.* ¶ 19). As a result, Sandy Spring assisted the Eyals in drafting and creating an easement on Lot 40 that would allow the Eyals to build a septic system on Lot 40 even if their own lot was approved for a septic system. (*Id.*). The new easement was larger than the proposed easement and gave the Eyals rights to exclude the Perkins from the use of the land on and around the easement. (*Id.* ¶¶ 19, 22). The Eyals assured Sandy Spring and Mr. Fleisher they would accept the Lot 39 assignment if the new easement terms were adopted. (*Id.* ¶ 19).

Neither Sandy Spring, Mr. Fleisher, nor anyone else involved in the transaction told the Perkins about the Eyals' newly negotiated easement. (*Id.* ¶ 20). Sandy Spring, Compass, and Mr. Fleisher had the Fuller Estate execute the septic easement on Lot 40 in August 2020 in essentially the same form demanded by the

Eyals, all without the Perkins' knowledge or approval.[3]   (*Id.* ¶ 21).   The only similarity between the proposed and executed septic easement on Lot 40 was its general location; otherwise, the terms of the new easement were not outlined during the assignment process and differed substantially from what the Perkins were led to believe the easement would involve.   (*Id.* ¶ 22).

Shortly after executing the assignment for Lot 40 with Sandy Spring, in or around June 2020, the Perkins hired District Title to complete a title search for their portion of the settlement. (*Id.* ¶ 23).   Sandy Spring and Mr. Fleisher wanted only one title company to handle the settlement of both assignments.   (*Id.*).   As a result, District Title was given all settlement responsibilities for the transaction in July 2020.   (*Id.*).   After Sandy Spring negotiated and executed the septic easement with the Eyals, District Title was notified that the easement had been executed on or around August 31, 2020, and that the signatures of all the parties involved were needed before District Title could record the septic easement with the county.   (*Id.* ¶ 25).   District Title did not notify the Perkins about the expansion of the septic

---

[3] The Perkins do not allege the name of the agreement in the complaint, but they attach it (the "Sewage Disposal Easement") to their opposition to Compass', Mr. Fleisher's, and Sandy Spring's motion to strike jury demand.   (ECF No. 61-1, at 1).   Sandy Spring, Compass, and Mr. Fleisher also attach it to their motions to dismiss and reply to Perkins' opposition to their motion to strike jury demand.   (ECF Nos. 50-2, at 7; 56-4, at 2; 62-3, at 2).

easement or its onerous terms. (*Id.* ¶ 26). The updated title report prepared by District Title in September 2020 before closing did not mention the septic easement. (*Id.*).

The Perkins settled the purchase of Lot 40 in September 2020. (*Id.* ¶ 27). The Perkins were unaware of the significant septic easement on their property that allowed their neighbors to exclude them fully from using a large portion of their land, as Sandy Spring and Mr. Fleisher did not disclose this information before the sale. (*Id.*). The deed for the property did not mention the negotiated and executed septic easement. (*Id.*). The septic easement was recorded in November 2020 without the Perkins' knowledge or approval. (*Id.* ¶ 28). The easement granted the Eyals the ability to use the easement for any other purpose without limitation and the unilateral right to fence off the easement area completely from the Perkins' use, and included a fee-shifting provision. (*Id.* ¶ 29). The Perkins did not become aware of the easement until the Eyals sought to begin constructing a septic system based on it. (*Id.* ¶ 30).

Due to the construction of the septic system granted by the easement negotiated by Sandy Spring and Mr. Fleisher, several trees on the Perkins' property were damaged and will have to be removed now or in the future, affecting the property's privacy. (*Id.* ¶ 32). The replacement of the damaged trees has been appraised and estimated to exceed $300,000.00. (*Id.*). The easement area

will be completely fenced off from the rest of Lot 40 after the completion of the septic system, depriving the Perkins of the ability to use and enjoy almost an acre of their property. (*Id.* ¶ 33). The septic easement and the construction done or to be done pursuant to the easement have substantially impaired the value of Lot 40. (*Id.*).

On March 2, 2022, the Eyals filed a complaint in the Circuit Court for Montgomery County against the Perkins seeking a declaratory judgment that the easement was valid and enforceable.[4] (ECF No. 50-2). The Eyals and the Perkins both filed motions for summary judgment and, after a hearing, the Circuit Court entered judgment in favor of the Eyals and against the Perkins. (ECF No. 50-3). By Order dated November 7, 2022 and entered November 23, 2022, the Circuit Court ordered, determined, and declared that the Sewage Disposal Easement is valid and enforceable. (*Id.*).

On July 7, 2023, the Perkins filed a complaint against Compass, District Title, Mr. Fleisher, and Sandy Spring in this court. (ECF No. 1). Compass and Mr. Fleisher filed an answer on August 25, 2023, (ECF No. 17), and an amended answer on August 28, 2023, (ECF No. 20). Compass and Mr. Fleisher then filed a counterclaim against the Perkins on August 28, 2023. (ECF No. 21).

---

[4] The Perkins' complaint does not contain allegations relating to the Circuit Court action. The facts from this paragraph are taken from Sandy Spring's memorandum and exhibits in support of its motion to dismiss. (ECF No. 50-1, at 2-3).

On September 26, 2023, District Title filed a motion to
dismiss the complaint. (ECF No. 36). On October 19, 2023, the
Perkins filed a motion to dismiss Compass' and Mr. Fleisher's
counterclaim. (ECF No. 45). On October 26, 2023, Sandy Spring
filed a motion to dismiss the complaint. (ECF No. 50). On October
30, 2023, the Perkins filed a response in opposition to District
Title's motion to dismiss. (ECF No. 51). On November 2, 2023,
Compass and Mr. Fleisher filed a response to the Perkins' motion
to dismiss their counterclaim, agreeing to dismiss without
prejudice their counterclaim, (ECF No. 53), and a notice of
voluntary dismissal of their counterclaim, (ECF No. 54). On
November 9, 2023, the Perkins filed a response in opposition to
Sandy Spring's motion to dismiss. (ECF No. 55). On November 10,
2023, District Title filed an amended motion to dismiss the
complaint. (ECF No. 56). The Perkins filed a response in
opposition to District Title's amended motion on November 20, 2023.
(ECF No. 57). On November 21, 2023, Sandy Spring replied to the
Perkins' opposition. (ECF No. 58).

On November 27, 2023, Compass and Mr. Fleisher filed a motion
to strike the Perkins' jury demand. (ECF No. 59). On November
30, 2023, Sandy Spring filed a line joining Compass' and Mr.
Fleisher's motion to strike. (ECF No. 60). On December 11, 2023,
the Perkins filed a response in opposition to the motion to strike.
(ECF No. 61). Compass and Mr. Fleisher replied on December 22,

2023, (ECF No. 62), and, although District Title did not join the motion, it replied on March 12, 2024, (ECF No. 63).

## II.  Standard of Review

### A. Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). A plaintiff's complaint needs only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).  Legal conclusions couched as factual allegations are

insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

"As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage[.]" *Faulkenberry v. U.S. Dep't of Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023) (quoting *Reamer v. State Auto. Mut. Ins. Co.*, 556 F.Supp.3d 544, 549 (D.Md. 2021), *aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022)). "However, 'the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is integral to the complaint and there is no dispute about the document's authenticity.'" *Id.* (quoting *Reamer*, 556 F.Supp.3d at 549). "A document is integral to the complaint if its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Id.* (quoting *Reamer*, 556 F.Supp.3d at 549) (internal quotation marks omitted).

A court may also "consider 'matters of which a court may take judicial notice.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *United States v. Unisys Corp.*, 178 F.Supp.3d 358, 363, n.2 (E.D.Va. 2016)). "[A] court may properly take judicial notice of matters of public record and other information that, under Federal Rule of Evidence 201, constitute adjudicative facts." *Id.* (quoting *Taylor v. Go-*

*Getters, Inc.*, No. 20-cv-3624-ELH, 2022 WL 1127902, at *7 (D.Md.
Apr. 15, 2022)).

**B. Failure to Join**

A person who is subject to service of process and whose
joinder will not deprive the court of subject-matter jurisdiction
must be joined under Rule 19(a)(1) if:

> (A) in that person's absence, the court cannot
> accord complete relief among existing parties;
> or
> (B) that person claims an interest relating to
> the subject of the action and is so situated
> that disposing of the action in the person's
> absence may:
> (i) as a practical matter impair or impede the
> person's ability to protect the interest; or
> (ii) leave an existing party subject to a
> substantial risk of incurring double,
> multiple, or otherwise inconsistent
> obligations because of the interest.

Under Rule 19(b):

> If a person who is required to be joined if
> feasible cannot be joined, the court must
> determine whether, in equity and good
> conscience, the action should proceed among
> the existing parties or should be dismissed.
> The factors for the court to consider include:
> (1) the extent to which a judgment rendered in
> the person's absence might prejudice that
> person or the existing parties;
> (2) the extent to which any prejudice could be
> lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the
> person's absence would be adequate; and
> (4) whether the plaintiff would have an
> adequate remedy if the action were dismissed
> for nonjoinder.

12

Fed.R.Civ.P. 19(b).

Thus, determining whether the court should dismiss under Rule 12(b)(7) involves a two-step inquiry: "First, the district court must determine whether the party is 'necessary' to the action under Rule 19(a). If the court determines that the party is 'necessary,' it must then determine whether the party is 'indispensable' to the action under Rule 19(b)." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir. 2000) (footnote omitted). Dismissal under this standard "is a drastic remedy, however, which should be employed only sparingly." *Id.* (quoting *Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999)).

The burden falls on a defendant to show that a plaintiff has failed to join a necessary and indispensable party. *See R-Delight Holding, LLC v. Anders*, 246 F.R.D. 496, 499 (D.Md. 2007) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1359 (3d ed. 2007)); *see also Pillar to Post, Inc. v. Maryland Home Inspectors, Inc.*, No. 18-cv-3761-DKC, 2020 WL 1158583, at *2 (D.Md. Mar. 10, 2020).

## III. Analysis

The Perkins bring the following claims against Defendants:

1) Violation of the Maryland Consumer Protection Act ("MCPA") (Sandy Spring)
2) Fraudulent Misrepresentation by Concealment or Nondisclosure (Sandy Spring)

3) Breach of Fiduciary Duty (Mr. Fleisher and Compass)

4) Fraudulent Misrepresentation (Mr. Fleisher and Compass)

5) Concealment or Nondisclosure (Mr. Fleisher and Compass)

6) Constructive Fraud (Mr. Fleisher and Compass)

7) Fraudulent Conspiracy (Sandy Spring, Mr. Fleisher, and Compass)

8) Negligence (District Title)

(ECF No. 1).

### A. Consideration of Extrinsic Evidence

Although the litigation is at the motion-to-dismiss stage, the parties attach exhibits to their motions, oppositions, and replies. District Title's exhibits attached to its motion to dismiss purportedly contain: (1) the Settlement Statement signed by representatives of the Faller Estate and the Perkins on September 18, 2020; (2) the Sewage Disposal Easement with representatives of the Faller estate being both grantors and grantees, made effective on August 31, 2020; (3) the Sales Contract and several addenda, ratified on May 26, 2020 between the Faller Estate and Sandy Spring; (4) a November 5, 2020 email from a Sandy Spring employee to an individual named Jessica[5] stating that the employee "just received the recorded septic easement"; and (5) an additional General Addendum to the Sales Contract signed by

---

[5] The complaint refers to Ms. Eyals as Jessica and Ms. Perkins as Jessie. (ECF No. 1 ¶ 12). The Circuit Court Order, however, refers to Ms. Perkins as Jessica. (ECF No. 50-3).

representatives of the Faller Estate and Sandy Spring.[6]  (ECF
Nos. 36-2; 36-3; 36-4; 36-5; 56-3; 56-4; 56-5; 56-6; 56-7).

In their opposition to District Title's motion to dismiss,
the Perkins attach exhibits purportedly containing: (1) an email
chain containing an August 31, 2020 email from a Sandy Spring
employee to a District Title employee and others notifying District
Title that it would be receiving a signed and notarized septic
easement for which it would be responsible for recording; and (2)
the Settlement Statement.  (ECF Nos. 57-1; 57-2).

In its motion to dismiss, Sandy Spring attaches exhibits
purportedly containing: (1) the Eyals' Circuit Court complaint
against the Perkins; (2) the Sewage Disposal Easement; and (3) the
Circuit Court Order granting declaratory relief to the Eyals.  (ECF
Nos. 50-2; 50-3).  In this Order, the Circuit Court declares:

> that (1) the Sewage Disposal Easement that is
> recorded in the Land Records for Montgomery
> County, Maryland at Book 60994, Page 461 is
> valid and enforceable; (2) that the
> Defendants, James and Jessica Perkins, are
> enjoined from blocking, obstructing or
> otherwise interfering with Plaintiffs, Amir
> and Jessica Eyal's right to enter, and fully
> utilize the easement area as set forth in the
> Sewage Disposal Easement; (3) that Defendants,
> James and Jessica Perkins, take immediate
> action to remove any structure or object
> (including, without limitation, their fence)
> that is obstructing Plaintiffs, Amir and

---

[6] District Title attaches identical exhibits to its motion
and amended motion to dismiss but adds one additional exhibit
(Exhibit "E", the additional General Addendum) to its amended
motion.  (ECF No. 56-7).

> Jessica Eyal's access to the easement area;
> (4) that Plaintiffs, Amir and Jessica Eyal,
> are entitled to their reasonable attorney's
> fees and costs as determined by this Court;
> and (5) that the Clerk of the Circuit Court
> shall record a copy of this Order in the Lands
> Records for Montgomery County, Maryland.

(ECF No. 50-3, at 1-2).

In their opposition to Compass', Mr. Fleisher's, and Sandy Spring's motion to strike jury demand, the Perkins attach an exhibit purportedly containing the Sewage Disposal Easement. (ECF No. 61-1).

In their reply to the Perkins' opposition to their motion to strike the jury demand, Compass and Mr. Fleisher attach exhibits purportedly containing: (1) the Sales Contract and several addenda; (2) the Assignment of Contract between Sandy Spring and Mr. Perkins d/b/a The Jessie James Group LLC executed June 12, 2020; (3) the Sewage Disposal Easement; (4) the Assignment of Contract between Sandy Spring and the Eyals executed June 16, 2020; (5) the Circuit Court Order; (6) portions of the Perkins' memorandum in support of their motion for partial summary judgment in the Circuit Court action; and (7) portions of the transcript from a hearing in the Circuit Court action. (ECF Nos. 62-1; 62-2; 62-3; 62-4; 62-5; 62-6; 62-7).

The parties do not dispute the authenticity of any documents filed by the opposing party. The complaint references the Settlement Statement, (ECF No. 1 ¶ 27); Sewage Disposal Easement,

16

(*id.* ¶¶ 19-21); Sales Contract and its addenda, (*id.* ¶¶ 10, 15-16); August 31, 2020 email from Sandy Spring to District Title notifying it of the easement, (*id.* ¶ 25); Assignment of Contract from Sandy Spring to the Perkins, (*id.* ¶ 15); and Assignment of Contract from Sandy Spring to the Eyals, (*id.* ¶¶ 19, 23).  The complaint does not explicitly reference the November 5, 2020 email, although it does allege the contents of the email—that the septic easement was recorded in November 2020.  (*Id.* ¶ 28).  Nor does the complaint explicitly mention the Eyals' lawsuit in the Montgomery County Circuit Court apart from alleging that the Perkins "incurred legal expenses contesting the enforceability of the easement."  (*Id.* ¶ 32).  The Perkins nonetheless acknowledge in their opposition to Sandy Spring's motion that "a final judgment was made in Eyal's Lawsuit[.]"  (ECF No. 55, at 2).

The Settlement Statement; Sewage Disposal Easement; Sales Contract and its addenda; August 31, 2020 email; Assignment of Contract to the Perkins; and Assignment of Contract to the Eyals are integral to the complaint because their "very existence, and not the mere information [they] contain[], give[] rise to the legal rights asserted."  *Reamer*, 556 F.Supp.3d at 549 (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D.Md. 2011)).  Additionally, the court will take judicial notice of the Circuit Court complaint, motion for summary judgment, transcript, and Order, which are matters of public record.  *See,*

*e.g.*, *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F.Supp.3d 536, 554 (D.Md. 2019) (taking judicial notice of an order in a different lawsuit brought by the plaintiff as a matter of public record). Accordingly, the court will consider all exhibits attached in the filings except the November 5, 2020 email.

**B. Perkins' Motion to Dismiss the Counterclaim**

The Perkins move to dismiss Compass' and Mr. Fleisher's counterclaim. (ECF No. 45). Compass and Mr. Fleisher subsequently filed a notice of voluntary dismissal of their counterclaim. (ECF No. 54). Rule 41(a)(1)(A)(i) permits voluntary dismissal any time "before the opposing party serves either an answer or a motion for summary judgment." Rule 41 applies with equal force to dismissal of a counterclaim. Fed.R.Civ.P. 41(b). The Perkins have not filed an answer or moved for summary judgment on the counterclaim. "A voluntary dismissal under Rule 41(a)(1)(i) 'is available as a matter of unconditional right and is self-executing, i.e., it is effective at the moment the notice is filed with the clerk and no judicial approval is required.'" *In re Matthews*, 395 F.3d 477, 480 (4th Cir. 2005) (quoting *Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 546 (4th Cir. 1993)). "[A]fter an action is voluntarily dismissed, the court lacks authority to conduct further proceedings on the merits." *Id.* (citing *Duke Energy Trading & Mktg., L.L.C. v. Davis*, 267 F.3d 1042, 1049 (9th Cir. 2001); *Foss v. Fed. Intermediate Credit Bank of St. Paul*, 808

F.2d 657, 660 (8th Cir. 1986)).  Because Compass' and Mr. Fleisher's voluntary dismissal renders the Perkins' motion to dismiss the counterclaim moot, the motion to dismiss will be denied.  *See, e.g.*, *Want v. Bulldog Fed. Credit Union*, No. 1:19-cv-02827-JMC, 2021 WL 3857952, at *5 (D.Md. Aug. 30, 2021).

### C. District Title's Motion to Dismiss

District Title has filed a motion and an amended motion to dismiss the complaint.  (ECF Nos. 36; 56).  The original motion to dismiss will be denied as moot in light of the filing of the amended motion.  *See, e.g.*, *Artis v. U.S. Foodservice, Inc.*, No. 11-cv-3406-ELH, 2012 WL 2126532, at *1 n.1 (D.Md. June 12, 2012) (denying original motion to dismiss as moot and deciding the amended motion).

In its amended motion, District Title argues that: (1) the waiver and release clauses of the Settlement Statement Addendum bar the Perkins' negligence claim against it, and (2) the complaint fails to include a mandatory party, Paragon Title.  (ECF No. 56-1, at 9-13).  The Perkins respond that: (1) the Settlement Statement does not excuse District Title from liability for its own negligence, (2) the Settlement Statement's exculpatory clauses are not enforceable if District Title has actual knowledge of title defects and ignores them, and (3) dismissal is the improper remedy

for the alleged failure to join Paragon Title.[7]  (ECF Nos. 51, at 3-5; 57, at 3-7).

## 1. **Rule 12(b)(6) Motion**

District Title asserts that the waiver and release clauses of the Settlement Statement release it from liability for failing to include the septic easement in its title examination.  (ECF No. 56-1, at 10-11).  The Settlement Statement provides:

> (B) The accuracy of any information furnished to District Title by other parties is merely reported and not guaranteed by District Title. District Title assumes no liability, express or implied, for matters not appearing of record at the time of title examination; for any tax consequences, for notices, or actual violations of any laws, criminal or otherwise, or governmental regulations, ordinances, rules, orders or requirements, issued by any department, office, or any other authority or agency of any local, state, county, or federal government as to ownership occupancy, taxes, zoning, environmental or otherwise; for the terms, or any notice or violation of the terms, of any document(s) to which District Title is not a party.  Borrower(s) and Seller(s) agree that in no event shall District Title's liability exceed the greater of its settlement fee or $500.
>
> . . . .
>
> (E) There is no attorney-client relationship between District Title and any party to this transaction.  District Title has rendered no tax advice, legal advice or opinion regarding this transaction and the parties acknowledge[]

---

[7] The Perkins make the first two arguments in both oppositions and add the third argument in their second opposition (in response to District Title's amended motion).

> that they are not relying upon any tax advice,
> legal advice or opinion from District Title.
> In this transaction District Title is acting
> as an agent of the title insurer identified on
> the settlement statement, and is performing a
> title examination for the purpose of complying
> with underwriting guidelines of the title
> insurer. District Title does not certify or
> guarantee the title to this property. An
> insured may seek redress for title claims
> under the terms of the title policy, but the
> insured shall not seek redress from District
> Title for such claims. Borrower(s) and
> Seller(s) agree that in no event shall
> District Title's liability exceed the greater
> of its settlement fee or $500.

(ECF No. 56-3, at 4). District Title argues that these provisions operate as exculpatory clauses that release it from any liability based on negligence. (ECF No. 56-1, at 10-11; *see also* ECF Nos. 50-1, at 4; 55, at 2; 62, at 10). District Title argues, and the other parties assume, that Maryland law applies. (ECF No. 56-1, at 9). Thus, the court will apply Maryland law.

Judge Chuang has discussed exculpatory clauses:

> Under Maryland law, which the parties agree is
> applicable to this dispute, "[a]n exculpatory
> clause is a 'contractual provision relieving
> a party from liability resulting from a
> negligent or wrongful act.[']" *BJ's Wholesale
> Club, Inc. v. Rosen*, 435 Md. 714, 80 A.3d 345,
> 351 (2013) (quoting Exculpatory Clause,
> Black's Law Dictionary (9th ed. 2009)). While
> "exculpatory contractual clauses generally
> are valid," the Court of Appeals of Maryland
> has held that "a threshold issue that must be
> considered" before addressing a clause's
> validity is "whether the clause at issue is,
> in fact, an exculpatory clause" that
> "shield[s] one of the parties from liability."
> *Adloo v. H.T. Brown Real Est., Inc.*, 344 Md.

> 254, 686 A.2d 298, 301 (1996).  The standard
> "is a stringent and exacting one, under which
> the clause must not simply be unambiguous but
> also understandable." *Id.* at 303.  To provide
> a release from liability for claims of
> negligence, the clause does not need to use
> that exact word, but its language must
> "clearly and specifically indicate[ ] the
> intent to release the defendant from liability
> . . . caused by the defendant's negligence."
> *Id.* at 304 (quoting *Barnes v. N.H. Karting
> Ass'n*, 128 N.H. 102, 509 A.2d 151, 154
> (1986)).  If the clause is "unclear and
> ambiguous, either the intention of the parties
> must be established through the introduction
> of relevant parol evidence or the issue
> resolved by strictly construing the clause
> against its author." *Id.*

*Okorie v. Resident Rsch., LLC*, 617 F.Supp.3d 320, 323-24 (D.Md.
2022).  Judge Chuang went on to explain that the "Maryland Court
of Appeals has on multiple occasions found broad exculpatory
clauses to be insufficient to waive liability for negligence when
the language did not unambiguously do so." *Id.* at 324 (discussing
*Adloo v. H.T. Brown Real Est., Inc.*, 344 Md. 254 (1996) and *Heat
& Power Corp. v. Air Prod. & Chemicals, Inc.*, 320 Md. 584 (1990)).
He denied the motion to dismiss, holding that the exculpatory
clause in the contract at issue, which released the defendant "from
all liability or responsibility[,]" did not contain an unambiguous
release of negligence claims because "[t]he mere inclusion of the
term 'all' is insufficient to convey such an intention[]" and "the
scope of the clause" is "undefined and ambiguous[,] . . .
provid[ing] no guidance on the types of injuries or claims that

are subject to the clause from which an inference of an intent to bar negligence claims could be made." *Id.* at 324-25.

Here, clause E of the Settlement Statement provides, in relevant part, that "the insured shall not seek redress from District Title for [title] claims." (ECF No. 56-3, at 4).  This clause contains a blanket release and "does not contain any expression of an intention to release [District Title] from negligence claims." *Okorie*, 617 F.Supp.3d at 324.  Clause B provides, in relevant part, that District Title "assumes no liability, express or implied, for matters not appearing of record at the time of title examination[.]" (ECF No. 56-3, at 4).  In the complaint, the Perkins allege that District Title prepared a title report in September 2020 and that the septic easement was recorded in November 2020. (ECF No. 1 ¶¶ 26, 28).  According to their allegations, then, the septic easement did not appear of record at the time of the title examination.

The Perkins also allege, however, that District Title "was notified that the easement had been executed on or around August 31, 2020, and that the signatures of all the parties involved were needed before District Title could record the septic easement with the county." (*Id.* ¶ 25).  They allege that District Title "had a duty to complete its title search in a manner that would allow the Perkins to make an informed decision on whether to proceed with the purchase of Lot 40[]" and that it "breached this duty by

failing to notify the Perkins of the size and terms of the easement after it was notified of the easement in its correspondence with [Sandy Spring] and Fleisher." (*Id.* ¶¶ 88, 89).   Clause B unambiguously releases District Title from liability for failing to report matters not appearing of public record at the time of title examination.   At this stage in the proceedings, however, it would be inappropriate to conclude that Clause B unambiguously releases District Title from *negligence* claims stemming from such a failure to report when it had actual knowledge of the easement. Based on the allegations and the exhibits provided to the court, the exculpatory clause does not "contain 'clear, unequivocal expression of the parties' intention' to release negligence-based claims[.]" *Okorie*, 617 F.Supp.3d at 324 (quoting *Adloo*, 686 A.2d at 305).   Hence, District Title's motion to dismiss for failure to state a claim will be denied.

### 2. Rule 12(b)(7) Motion

Next, District Title contends that the complaint fails to include a required and necessary party, Paragon Title. (ECF No. 56-1, at 11-13).   It argues that Paragon Title, a different title company, was a party to negotiations between the Perkins, Sandy Spring, Mr. Fleisher, and Compass regarding the placement of a septic easement on Lot 40, and that District Title had no knowledge of the easement until Paragon Title transferred the contract and easement to it on or about July 28, 2020.   (ECF

No. 56-1, at 4).  It asserts, therefore, that "Paragon Title is the party best in the position to address and respond to the allegations concerning the easement at the heart of this matter and they have the knowledge and awareness to provide relevant and dispositive evidence, testimony, and documentation[,]" while District Title "has the least information and awareness, and nothing meaningful (District Title is not needed to provide already publicly available records) to offer the parties or this Honorable Court."  (*Id.* at 11-12).

District Title argues that Paragon Title is subject to service of process and, because it operates offices in Washington, DC and Maryland, its joinder will not deprive the court of subject matter jurisdiction.  (*Id.* at 13).  It also contends that the court "must use Rule 19(b) to determine whether to continue the litigation without the absentee party or dismiss the suit entirely."  (*Id.*).

District Title has not satisfied its burden of demonstrating that in Paragon Title's absence, the court cannot accord complete relief among existing parties or that Paragon Title claims an interest relating to the subject of the action.  District Title has, at best, demonstrated that Paragon Title might be a joint tortfeasor.  Yet it "has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."  *Loring v. S. Air Charter Co., Ltd.*, No. 16-cv-3844-PX, 2018 WL 3122440, at *5 (D.Md. June 26, 2018) (quoting *Temple v.*

*Synthes Corp.*, 498 U.S. 5, 7 (1990)); *see also* Fed.R.Civ.P. 19 advisory committee's note to 1966 amendment ("[A] tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability."); *Iraheta v. Lam Yuen, LLC*, No. 12-cv-1426-DKC, 2012 WL 5995689, at *5 (D.Md. Nov. 29, 2012). Because District Title has not satisfied the threshold requirements of Rule 19(a), it is unnecessary to determine whether the action should proceed among the existing parties or should be dismissed pursuant to Rule 19(b). Thus, District Title's motion to dismiss for failure to join a necessary party will be denied.

### D. Sandy Spring's Motion to Dismiss

In its motion to dismiss, Sandy Spring asserts that the Perkins' claims could have been brought in the prior litigation in the Circuit Court and the doctrine of res judicata precludes the Perkins' claims because: (1) Sandy Spring is in privity with the Eyals, who were plaintiffs in the prior litigation in the Circuit Court, because Sandy Spring assigned its rights related to Lot 39 to the Eyals pursuant to the Sales Contract in June 2020, which incorporated the creation of the Sewage Disposal Easement; (2) the claims in this case arise from the same transaction as the claims resolved by the prior litigation because the disputes both relate to the validity and enforceability of the easement arising from the sale of Lots 39 and 40; and (3) the Circuit Court's November

7, 2023 Order is a final judgment on the merits.  (ECF No. 50-1, at 5-7).

The Perkins respond that they were not required to bring their claims against Sandy Spring in the prior litigation because: (1) Maryland's counterclaim and crossclaim rule is permissive; (2) the Perkins' claims against Sandy Spring and the Eyals' claims against the Perkins are not interdependent in the sense that no finding against Sandy Spring in this action will invalidate the rights established by the Circuit Court in the prior litigation; and (3) the Perkins do not argue that the easement is invalid but rather that Sandy Spring's misconduct burdened their land with precisely the easement that the Eyals claimed in the prior litigation, but that this was not an easement to which the Perkins ever agreed. (ECF No. 55, at 2-4).  The Perkins also contend that Sandy Spring is not in privity with the Eyals because: (1) Sandy Spring no longer had any ownership interest in the Eyals' property when the Eyals filed their declaratory action in the Circuit Court, and therefore had no stake in whether the septic easement was declared valid; and (2) Sandy Spring was not a named party in the Eyals' lawsuit and the assignment between Sandy Spring and the Eyals did not give Sandy Spring any right to control how the Eyals pursued their claim.  (*Id.* at 5-6).

In its reply, Sandy Spring reiterates that it is in privity with the Eyals and that the Perkins' claims could have been raised

and determined in the prior litigation because they arise from the same transaction.  (ECF No. 58, at 2-5).

The doctrine of claim preclusion, or res judicata,

> bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation.

*Spangler v. McQuitty*, 449 Md. 33, 65 (2016) (quoting *Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140 (2012)).  Thus, under Maryland law, claim preclusion

> precludes the relitigation of a suit if (1) the parties in the present litigation are the same or in privity with the parties to the earlier action; (2) the claim in the current action is identical to the one determined in the prior adjudication; and (3) there was a final judgment on the merits in the previous action.

*Bank of New York Mellon v. Georg*, 456 Md. 616, 625 (2017) (quoting *Powell v. Breslin*, 430 Md. 52, 63-64 (2013)).  The doctrine is meant to "restrain[] a party from litigating the same claim repeatedly and ensure[] that courts do not waste time adjudicating matters which have been decided or *could have been* decided fully and fairly."  *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 107 (2005).

The Perkins do not dispute that the Circuit Court Order was a final judgment on the merits.  Nor do they explicitly argue that

the claims in the instant litigation are not identical to the claim in the Circuit Court action.   Rather, they assert that were not required to bring their claims against Sandy Spring in the Circuit Court action.   (ECF No. 55, at 2-4).   They do, however, dispute whether Sandy Spring was in privity with the Eyals.   (*Id.* at 4-6).

"For purposes of res judicata, privity 'generally involves a person so identified in interest with another that [the person] represents the same legal right.'"   *Bank of New York Mellon*, 456 Md. at 659 (quoting *FWB Bank v. Richman*, 354 Md. 472, 498 (1999)). In Maryland,

> It is well established that a judgment may not be pleaded as res judicata by strangers to the action in which it was rendered, but it may be pleaded only [by] the parties to the action and their privies.  Generally, the parties to a suit are those persons who are entered as parties of record.  But for the purpose of the application of the rule of res judicata, the term 'parties' includes all persons who have a direct interest in the subject matter of the suit, and have a right to control the proceedings, make defense, examine the witnesses, and appeal if an appeal lies.  So, where persons, although not formal parties of record, have a direct interest in the suit, and in the advancement of their interest take open and substantial control of its prosecution, or they are so far represented by another that their interests receive actual and efficient protection, any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties.

*Id.* (quoting *Ugast v. La Fontaine*, 189 Md. 227, 232-33 (1947));
*see also Cochran*, 426 Md. at 141).

In the Circuit Court action, the Eyals were the plaintiffs,
the Perkins were the defendants, and Sandy Spring was not a party.
In the instant litigation, the Perkins are the plaintiffs, Sandy
Spring is a defendant, and the Eyals are not parties.  The Perkins
allege, and Sandy Spring agrees, that Sandy Spring assigned its
rights regarding Lot 39 to the Eyals in June 2020.  (ECF Nos. 1
¶¶ 12, 19; 50-1, at 2).  According to the Circuit Court Order, the
Eyals filed the Circuit Court action on March 2, 2022, (ECF No. 50-
2, at 1), long after Sandy Spring assigned its rights to the Eyals.
Sandy Spring has not shown that it had a direct interest in the
Circuit Court proceedings.  Its interest is in avoiding liability
for the allegedly fraudulent acts or omissions leading to the
Perkins' purchase of Lot 40.  The Eyals, on the other hand, filed
the Circuit Court action to advance their interest in obtaining a
declaration that the Sewage Disposal Easement was valid and
enforceable.  Whether the easement was declared enforceable would
not have affected Sandy Spring's rights because it had already
assigned its rights with respect to Lot 39 to the Eyals by the
time the Eyals filed the Circuit Court action.  *Cf. La Belle
Epoque, LLC v. Old Eur. Antique Manor, LLC*, 406 Md. 194, 211 (2008)
("When a lease is assigned, an assignee 'steps into the lessee's
shoes and acquires all the lessee's rights in the lease.'  Privity

30

of estate ends between the lessor and lessee and is created between the lessor and the assignee." (quoting *Italian Fisherman, Inc. v. Middlemas*, 313 Md. 156, 163 (1988))).  Sandy Spring had no interest in whether the easement was declared valid.  *See Womack v. Ward*, No. 17-cv-3634-DKC, 2018 WL 3729038, at *3 (D.Md. Aug. 6, 2018), *aff'd*, 755 F.App'x 262 (4th Cir. 2019) (finding that a law firm and mortgage servicer were in privity with substitute trustees where the substitute trustees are attorneys of the law firm and the mortgage servicer appointed the substitute trustees to initiate a foreclosure action because "all share a mutual interest with respect to the validity of the foreclosure judgment[]").  Additionally, Sandy Spring has not shown that its interest in avoiding liability for its part in the sale of Lot 40 to the Perkins was adequately represented in the Circuit Court action.  Nor has it shown that it had a right to control proceedings, examine the witnesses, or appeal if the judge had ruled against the Eyals.

Based on the information in the allegations and the parties' exhibits, it would be inappropriate to conclude at this juncture that the Eyals and Sandy Spring are in privity.  Because res judicata does not prevent the court from adjudicating the Perkins' claims against Sandy Spring, Sandy Spring's motion to dismiss will be denied.

**E. Compass' and Mr. Fleisher's Motion to Strike Jury Demand**

Compass and Mr. Fleisher move to strike the Perkins' jury demand because the Sewage Disposal Easement contains a jury waiver. (ECF No. 59, at 2).  Sandy Spring subsequently joined the motion. (ECF No. 60).  The Perkins respond that: (1) the jury waiver is not applicable because their claims do not arise from the Sewage Disposal Easement; rather, they seek relief for Defendants' alleged deception and false statements that preceded the easement; (2) Defendants cannot enforce the jury waiver because they were not parties to nor direct beneficiaries of the Sewage Disposal Easement; and (3) they did not knowingly waive their right to a jury.  (ECF No. 61, at 2-5).

Compass and Mr. Fleisher reply that the complaint derives from the Sewage Disposal Easement itself because the Perkins claim damages as a result of the easement and/or its enforceability. (ECF No. 62, at 4).  They argue that in the Assignment of Contract, the Perkins agreed to assume from Sandy Spring all rights and obligations including that an easement would be created on Lot 40 "either before settlement or immediately thereafter[.]"  (ECF Nos. 62, at 6; 62-2, at 4-5).[8]

---

[8] In the last few pages of their reply, Compass and Mr. Fleisher argue that the Perkins are barred from pursuing claims for fraud against Compass and Mr. Fleisher because, in Sales Contract, the Perkins "disavowed any reliance upon representations made by Defendants Compass and Fleisher." (ECF No. 62, at 8).  It is unclear why they are advancing an argument on the merits in

District Title has also filed a reply even though it did not join the motion to strike.  (ECF No. 63).  It argues that the Perkins do contest the terms of the easement itself because their complaint and opposition "repeatedly and specifically refer[] to the terms of the easement, object[] to its terms, refer[] to i[t] as "onerous", and categorically fixate[] on and make[] arguments about the easement-[their] arguments addressing 'concealment and misrepresentations' are clearly secondary at best." (ECF No. 63, at 3).  It asserts that the jury waiver can be enforced because the Perkins agreed to assume from Sandy Springs all of its rights and obligations.  (*Id.*).  Finally, it contends that to support their argument that they did not knowingly agree to the jury waiver, the Perkins needed to argue that the assignment is void, voidable, unenforceable, or executed under fraud or duress, but they have not done so.  (*Id.* at 3-4).

The Supreme Court of Maryland has explained:

> Article 23 of the Maryland Declaration of Rights[] guarantees the right to a jury trial in civil cases.  Although the right to a jury trial is fundamental, parties can contractually waive their right to a jury trial.  In order to have a valid waiver of a fundamental right such as the right to a jury trial, however, there ordinarily must exist a "knowing and intelligent" waiver of the right.

---

their reply to the Perkins' opposition to their motion to strike the jury demand.  They filed an answer and have not moved to dismiss any claim on the merits.  (ECF Nos. 17; 20).

*Walther v. Sovereign Bank*, 386 Md. 412, 442 (2005); *see also Westbard Apartments, LLC v. Westwood Joint Venture, LLC*, 181 Md.App. 37, 50 (2007).   In Maryland, a non-signatory to an arbitration agreement may enforce the agreement's jury waiver if the signatory's claims arise out of and relate directly to the agreement:[9]

> [E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory [sic].  When each of a signatory's claims against a nonsignatory [sic] "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise . . . out of and relate . . . directly to the [written] agreement," and arbitration is appropriate.

*Westbard*, 181 Md.App. at 51 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

Here, paragraph 7 of the Sewage Disposal Easement provides:

> Each party waives any right such party may have to a jury trial in the event of any action arising from or connected with this agreement or any of its provisions.  This waiver is knowingly, willingly and voluntarily made by each party and each party acknowledges that the other party has not made any representation of fact to induce this waiver of trial by jury or any way modify or nullify its effect.

---

[9] Although the Sewage Disposal Easement does not contain an agreement to arbitrate, case law relating to jury waivers in arbitration agreements is helpful here because the easement, like an arbitration agreement, contains a waiver of the right to a jury trial.

(ECF No. 61-1, at 2).

Although the Perkins' claims assume the existence of the Sewage Disposal Easement, their claims do not necessarily arise out of and directly relate to the easement.  When a defendant conceals and misrepresents information leading to the execution of an agreement, claims relating to the alleged fraud do not arise from the agreement itself.  The facts in this case are similar to those in *Burt v. Delmarva Sur. Assocs., Inc.*, No. 3417, Sept. term, 2018, 2020 WL 2091748 (Md.App. Apr. 30, 2020), where the court held:

> Burt's claims, as pleaded, exist as a result of alleged incomplete statements made, and facts concealed, by Appellees in the run-up to execution of the agreement.  We imagine that copies of the pre-execution draft of the indemnification agreement and the executed version may be offered in evidence at the trial of the present case so as to allow the fact-finder to conclude whether "protections" for Burt were included.  Nonetheless, the efficacy of the agreement is not at issue as regards the third-party complaint.  We hold that the jury waiver in the indemnification agreement may not be invoked by Appellees to bar a jury trial with regard to Burt's third-party complaint against them.

2020 WL 2091748, at *8.  Here, similarly, the Perkins do not dispute the efficacy of the easement.  Indeed, their allegations relate to the process leading them to execute the Assignment of Contract, not the validity of the easement itself.  Thus, as in *Burt*, Defendants may not invoke the jury waiver.

Moreover, Defendants cannot enforce the jury waiver because they were not signatories to the Sewage Disposal Easement.  The only signatories were personal representatives of the Faller Estate as both grantees and grantors.   (ECF No. 61-1, at 1).  "Where a non-signatory benefits from the contractual relation of parties to an agreement but not the agreement itself, the non-signatory has not 'directly benefitted;' hence an arbitration clause will not have binding effect."  *Thompson v. Witherspoon*, 197 Md.App. 69, 87-88 (2011) (quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2$^d$ Cir. 2001)).  Defendants do not stand to benefit from the existence of the easement itself; rather, they have allegedly benefitted by concealing its existence and thereby inducing the Perkins to execute the Assignment of Contract.

Accordingly, the Perkins did not waive their right to a jury trial.  Compass', Mr. Fleisher's, and Sandy Spring's motion to strike the jury demand will therefore be denied.

**IV.  Conclusion**

For the foregoing reasons, District Title's motion to dismiss the complaint will be denied as moot; the Perkins' motion to dismiss the counterclaim will be denied as moot; Sandy Spring's motion to dismiss the complaint will be denied; District Title's amended motion to dismiss the complaint will be denied; and

Compass', Mr. Fleisher's, and Sandy Spring's motion to strike the jury demand will be denied.  A separate order will follow.

                                                                   /s/

DEBORAH K. CHASANOW
United States District Judge