IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JESSIE PERKINS, et al.                :

                               :

     v.                                 :   Civil Action No. DKC 23-1823

                               :

SANDY SPRING BUILDERS, LLC,
et al.                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this dispute over a property easement are four motions for summary judgment – filed by Sandy Spring Builders, Inc. ("Sandy Spring"), (ECF No. 127); Paragon Title and Escrow Co. ("Paragon"), (ECF No. 129); District Title, A Corp. ("District Title"), (ECF No. 132); and Compass DMV, LLC ("Compass") and Marc Fleisher ("Mr. Fleisher") (ECF No. 133) – and a motion for disclosure of an expert out of time filed by Compass and Mr. Fleisher, (ECF No. 121). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment filed by Sandy Spring, (ECF No. 127), will be denied; the motion for summary judgment filed by District Title, (ECF No. 132), will be denied; the motion for summary judgment filed by Compass and Mr. Fleisher, (ECF No. 133), will be denied in part and granted in part; the motion for summary judgment filed by Paragon, (ECF No. 129), will be granted; and the motion

for disclosure of an expert out of time filed by Compass and Mr. Fleisher, (ECF No. 121), will be granted.

## I.   Background

### A.   Factual Background[1]

The background of this case has been set forth in detail in two earlier decisions of this court.  (ECF Nos. 64, 110).  The court will summarize the facts here to provide context for the relevant issues.  In or around spring 2020, the Estate of Charles Sidney Faller, Jr. ("Faller Estate") sought to sell the property located at 10819 (Lot 39) and 10821 (Lot 40) Alloway Drive, Potomac, Maryland 20854. (ECF No. 127-1, at 2).  The Faller Estate entered into a contract with Sandy Spring for both lots in May 2020.  (*Id*.).  The contract designated Sandy Spring Builders and/or the Assigns as the buyer, (ECF No. 134, at 2), and identified Compass as the broker for the seller (the Faller Estate), (ECF No. 133-2, at 4).  On the signature page of the contract, Mr. Fleisher and Compass were listed as the Listing Agent and Selling Agent. (*Id*.).

Plaintiffs Jessie and James Perkins ("the Perkins") expressed interest in Lot 40 to Mr. Fleisher around May 2020.  (*Id*.).  At that time, Jessie Perkins was a licensed real estate agent in Virginia and the District of Columbia, and she had previously been

---

[1] The facts herein are undisputed unless otherwise noted.

licensed in Maryland.   (*Id*. at 6).   As part of the discussions around the purchase of the property, Mr. Fleisher told the Perkins about the provision in the contract for a septic easement on Lot 40 for the benefit of Lot 39. (*Id.*, at 5-6).   After the Perkins expressed concerns about the impact of any septic easement on their land, Mr. Fleisher told them that any septic easement would not be visible above ground, (ECF No. 134-4, at 6).   The Perkins also allege that Mr. Fleisher told them the septic easement would not be necessary if Lot 39 passed its percolation test.   (ECF No. 133-2, at 6).   Mr. Fleisher denies making the statement that the easement on Lot 40 would not be necessary if Lot 39 passed the appropriate tests.   (*Id*.).   Following these conversations, the Perkins executed an assignment with Sandy Spring for the right to purchase Lot 40 (the "Assignment").   (ECF No. 127-1, at 2-3).   The Assignment stated "the [Perkins] understand[] that an easement is being created on Lot 40 either before settlement or immediately thereafter for the creation of the 'Proposed Septic Easement for the Benefit of Lot 39' as shown on the plan attached to the General Addendum."   (ECF No. 127-3, at 4-5).   The septic easement attached depicted a two-trench underground system and did not set forth any rights granted to the owners of Lot 39 as part of the easement. (ECF No. 136-2, at 2-3).   Meanwhile, Sandy Spring was also in discussions with Amir and Jessica Eyals ("the Eyals") regarding

3

the purchase of the other lot.   On June 16, 2020, Sandy Spring executed an assignment with the Eyals for the right to purchase Lot 39.  (ECF No. 127-1, at 3).   The assignment provided the Eyals the right to use the proposed septic easement area in the rear corner of Lot 40.  (*Id.*)

The settlement for both Lot 39 and Lot 40 was initially planned to take place at Paragon.  (*Id.*, at 4).   However, the Perkins expressed some discomfort with using Paragon and decided to use District Title.  (*Id.*).   Paragon transferred the file to District Title around June or July 2020.   (ECF No. 130-3, at 8; ECF No. 132-1, at 3).

After both the Perkins and the Eyals signed their respective assignments, a new easement was drafted.   The updated version of the easement extended further into Lot 40, had four or five trenches rather than the two trench system in the version attached to the Assignment, and allowed the Eyals to build a fence around the easement.   (ECF No. 136-2, at 3).   The updated version of the easement was delivered to District Title on September 11, 2020. (ECF No. 127-1, at 4).   District Title did not provide the Perkins with a copy of the updated easement.  (ECF No. 136-2, at 1).  While the circumstances of the drafting are disputed, it is undisputed that the Perkins were unaware of the changes to the easement when they closed on the purchase on September 18, 2020.   (*Id*. at 2).

4

This version of the easement was recorded on November 5, 2020. (ECF No. 132-1, at 4).

The Perkins did not discover the recorded version of the easement until several months after closing. (ECF No. 136-2, at 2). Unsurprisingly, litigation ensued:

> On March 2, 2022, the Eyals filed a complaint in the Circuit Court for Montgomery County against the Perkins seeking a declaratory judgment that the easement was valid and enforceable. (ECF No. 50-2). The Eyals and the Perkins both filed motions for summary judgment and, after a hearing, the Circuit Court entered judgment in favor of the Eyals and against the Perkins. (ECF No. 50-3). By Order dated November 7, 2022 and entered November 23, 2022, the Circuit Court ordered, determined, and declared that the Sewage Disposal Easement is valid and enforceable. (*Id.*).

(ECF No. 64, at 8) (footnote omitted). The Perkins appealed the decision of the Circuit Court to the Appellate Court of Maryland, which reversed the Circuit Court's decision on September 18, 2024. (ECF No. 127-11, at 2-4). The Appellate Court of Maryland held that the easement the Eyals sought to enforce was invalid and unenforceable, as the Perkins had not seen the easement and could not have manifested their assent. (*Id.* at 17). The court, however, estopped the Perkins from challenging the validity of *any* septic easement on their property, as the Eyals had relied on their initial assent to an easement in the Assignment. (*Id.*). The Appellate Court remanded to the Circuit Court to "determine what

5

precise terms and conditions should govern the septic easement by estoppel." (*Id*. at 18).  When the Perkins and the Eyals returned to Circuit Court, the two parties entered into a settlement agreement, which set the parameters of the easement by estoppel to be the same as the expanded easement that the Perkins were not shown before closing.  (ECF No. 136-2, at 2-3).

## B.    Procedural Background

As the case between the Eyals and the Perkins wound through Maryland state court, the Perkins filed the instant case in this court.  On July 7, 2023, the Perkins filed a complaint against Sandy Spring, District Title, Mr. Fleisher, and Compass. (ECF No. 1).   The complaint brings two claims against Sandy Spring (violation of the Maryland Consumer Protection Act (Count I) and fraudulent misrepresentation by concealment or nondisclosure (Count II)), four claims against Mr. Fleisher and Compass (breach of fiduciary duty (Count III), fraudulent misrepresentation (Count IV), fraudulent misrepresentation by concealment or nondisclosure (Count V), and constructive fraud (Count VI)), one claim against Compass, Mr. Fleisher, and Sandy Spring together (fraudulent conspiracy (Count VII)), and one claim against District Title (negligence (Count VIII)).  On August 20, 2024, this court ruled on several pending motions and denied Sandy Spring and District Title's motions to dismiss.  (ECF Nos. 64, 65).  On September 18,

2024, District Title filed a third-party complaint against Paragon, pursuant to Fed.R.Civ.P. 14. (ECF No. 69). District Title brings five claims in the third-party complaint: indemnification (Count I), equitable indemnification (Count II), contribution (Count III), negligence (Count IV), and breach of fiduciary duty (Count V). Paragon filed a motion to dismiss the third-party complaint on November 6, 2024. (ECF No. 83). This court partially granted the motion to dismiss on May 7, 2025, dismissing the breach of fiduciary duty claim (Count V). (ECF No. 111).

The parties proceeded through discovery, which closed on July 21, 2025. (ECF No. 117). On July 25, 2025, Compass and Mr. Fleisher filed a motion for disclosure of expert out of time. (ECF No. 121). No party opposed the motion.

The defendants and third-party defendant have now filed motions for summary judgment. Sandy Spring filed a motion for summary judgment on August 13, 2025. (ECF No. 127). The Perkins filed a response on September 5, 2025, (ECF No. 136), and Sandy Spring filed a reply on September 19, 2025, (ECF No. 141). Paragon filed a motion for summary judgment on District Title's third-party complaint on August 18, 2025. (ECF No. 129). District Title filed a response on September 5, 2025, (ECF No. 135), and Paragon filed a reply on September 12, 2025, (ECF No. 140). District Title

7

filed a motion for summary judgment on the Perkins' complaint on August 18, 2025, (ECF No. 132), as did Compass and Mr. Fleisher, (ECF No. 133).  The Perkins responded to both District Title, (ECF No. 137), and Compass and Mr. Fleisher, (ECF No. 138), on September 5, 2025.  District Title did not reply.  Compass and Mr. Fleisher filed a reply on September 22, 2025.  (ECF No. 142).

## II.   Standard of Review

### A.    Summary Judgment

Summary judgment is appropriate under Fed.R.Civ.P. 56(a) when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if it "might affect the outcome of the suit under the governing law."  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011) (Shedd, J., dissenting)).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When evaluating a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id*. at 249.  Accordingly, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but

whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett v. Johnson*, 532 F.3d 291, 297 (2008). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[A] complete failure of proof concerning an essential element. . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Chung Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citing *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). The court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774,

778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. Analysis

The Perkins' complaint contains eight counts, seven of which are only against one defendant or related pair of defendants (in the case of Compass and Mr. Fleisher).   One count, fraudulent conspiracy (Count VII), is brought against three defendants: Sandy Spring, Mr. Fleisher, and Compass.   All claims are brought under Maryland law.   (ECF No. 64, at 21).   Through their individual motions for summary judgment, the defendants seek summary judgment on all counts brought against them.

District Title's third-party complaint contains five claims against the third-party defendant, Paragon.   One claim was dismissed earlier in this litigation, (ECF No. 111), so four claims remain.   Paragon seeks summary judgment on all four remaining claims.

### A.   Sandy Spring's Motion for Summary Judgment

As will be explained, Sandy Spring has not shown that it is entitled to summary judgment on any of the claims against it, or that it should benefit from collateral estoppel driven by the earlier state court action.   Its motion will be denied.

10

### 1.   Count I: Maryland Consumer Protection Act

Sandy Spring makes multiple arguments as to why it is entitled to summary judgment on the Perkins' claim under the Maryland Consumer Protection Act ("MCPA") (Count I).  Ultimately, the many disputes of material fact make summary judgment inappropriate on this claim.

"The MCPA prohibits any 'unfair, abusive, or deceptive trade practice' in the marketing and sale of consumer goods."  *Bowers v. Legum & Norman Realty, Inc.*, 776 F.Supp.3d 294, 309 (D.Md. 2025) (citing Md. Code Ann., Com. Law § 13-303 (West)).  The *Bowers* court went on:

> The MCPA defines "unfair, abusive, or deceptive trade practices" to include:
>
> (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;
> * * *
> (3) Failure to state a material fact if the failure deceives or tends to deceive;
> * * *
> (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any

> material fact with the intent that a consumer rely on the same in connection with:
>
> (i) The promotion or sale of any consumer goods, consumer realty, or consumer service....

*Id.* (citing Md. Code Ann., Com. Law § 13-301 (West)). To prevail on a damages action under the MCPA, consumers must prove that they relied upon the misrepresentation or deceptive practice. *Id.* (citing *Bank of Am., N.A. v. Jill. P. Mitchell Living Tr.*, 822 F.Supp.2d 505, 532 (D.Md. 2011)).

Sandy Spring first argues that there are no genuine disputes of material fact because the differences between the easement drawing attached to the assignment and the easement eventually recorded are "completely insignificant as the septic system is underground," and there is "no evidence" that the Perkins relied on the specifics of the easement. (ECF No. 127-1, at 11). Disputes of material fact clearly remain. In her deposition, Ms. Perkins described "large above-ground plumbing cleanouts and caps that stick up and are clearly visible, as well as hazardous depressions in the ground above the trenches." (ECF No. 136-2, at 3). There is also evidence in the record that the Perkins relied on the representations related to the easement; Ms. Perkins stated she "would never have agreed to close on the purchase of Lot 40 if [she] had known that the easement [as eventually recorded] was going to be part of the deal." (*Id.*). Sandy Spring then argues

that it had "no involvement" in the "minor changes" to the easement between the assignment and the settlement.   (ECF No. 127-1, at 11).   The record shows a dispute of material fact on this point as well; emails in the record show Mimi Kress of Sandy Spring discussing a draft easement with Amir Eyal in June 2020, between the execution of the Assignment and closing.   *See* (ECF No. 130-6, at 2, 8-9).   Summary judgment will be denied on this ground.

Sandy Spring's arguments tied to the language of the MCPA are no more successful.   Sandy Spring points out that Ms. Perkins is a sophisticated consumer because she has a real estate background, which it seems to imply means that the MCPA claim must fail.  (ECF No. 127-1, at 10).   But its sophistication loophole finds no support in the text of the law.   The MCPA defines "consumer" as "an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit."   Md. Code. Ann., Com. Law § 13-101(c)(1) (West).   There is no consideration of the level of sophistication of the consumer in the statute.   This argument may be a reference to the standard from *Green v. H & R Block, Inc.*, 355 Md. 488, 524 (1999), which states an omission is material "if a significant number of unsophisticated consumers would find that information important in determining a course of action."   The Perkins' experience does not change the standard for finding a material omission.   *See Bank of*

13

*Am., N.A.*, 822 F.Supp.2d at 534.  Sandy Spring does not tie the quick reference to consumer sophistication to the reasonableness of the Perkins' reliance.  In a reach for a textual argument, Sandy Spring states "it is unclear whether [Sandy Spring], as the assignor of the contract of sale, can constitute [a] 'merchant' under the MCPA." (ECF No. 127-1, at 10-11).  With no further analysis of either the law or the facts on whether Sandy Spring is a merchant for purposes of the MCPA, there is no basis on which to grant summary judgment on this point.

Finally, Sandy Spring seeks the benefit of collateral estoppel.  While the briefing does not make clear how its collateral estoppel argument ties into the MCPA claim specifically, Sandy Spring seeks to argue that the dispute in this case is essentially blocked by the earlier case involving the Eyals in Maryland state court.  (*See, e.g.*, *id.* at 11).

Collateral estoppel "precludes a party from re-litigating a factual issue that was essential to a valid and final judgment against the same party in a prior action." *Shader v. Hampton Imp. Ass'n, Inc.*, 217 Md.App. 581, 605 (2014) (citing *Welsh v. Gerber Prods., Inc.*, 315 Md. 510, 516 (1989)), *aff'd*, 443 Md. 148 (2015). The *Shader* court explained the test for applying collateral estoppel in Maryland:

> 1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
> 2. Was there a final judgment on the merits?
> 3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
> 4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Id.* Whether collateral estoppel should be applied is "ultimately a question of law for the court." *Id.*

While it is not certain that any of the four prongs are met, Sandy Spring stumbles on the first step. Sandy Spring's argument demonstrates that the issue decided in the prior adjudication is not the same as the question in the current litigation. Sandy Spring states, "the Circuit Court for Montgomery County has already determined that the easement by estoppel, which Mr. and Mrs. Perkins are subject to based upon the language in the Assignment and easement drawing in the General Addendum, is *identical* to the easement drawing that was [delivered to District Title before closing and eventually recorded]." (ECF No. 127-1, at 11). Thus, it argues, "this issue has already been determined against Mr. and Mrs. Perkins, and they may not relitigate the matter in this Court." (*Id.*). But the Perkins are not claiming that the easement they are now subject to following the Circuit Court's decision is different from the easement that was recorded after the sale. Rather, the Perkins argue that the easement they saw attached to

15

the Assignment before closing was different than the one eventually recorded.  (*See* ECF No. 136, at 13).  The issue decided in the earlier case in state court is not identical to the issue in this current case.  As this threshold issue bars application of collateral estoppel, the court will not reach the other requirements.  Summary judgment will be denied.

**2.    Count II: Fraudulent Concealment**

Sandy Spring next moves for summary judgment on the Perkins' fraudulent concealment claim.

> Under Maryland law, fraudulent concealment requires showing that (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose the fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

*Singh v. Lenovo (United States) Inc.*, 510 F.Supp.3d 310, 329-30 (D.Md. 2021) (citing *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 138 (2007)).  According to Sandy Spring, "Mr. and Mrs. Perkins allege that [Sandy Spring] failed to disclose (a) that the septic system would be larger than originally anticipated; (b) that Mr. and Mrs. Eyal would be permitted to fence off the septic area; and (c) that Mr. and Mrs. Eyal planned to build a septic system on Lot 40 even if their property (Lot 39) was approved for a septic system."  (ECF No. 127-1, at 12).  Sandy Spring moves for summary judgment,

arguing that it disclosed these facts or that the facts themselves are not material. (*See id.* at 12-14).

None of Sandy Spring's arguments entitles it to summary judgment.  First, Sandy Spring points to the language in the Assignment as sufficient notice that there would be an easement on the Perkins' property.  (*Id.* at 12).  The Perkins have presented evidence disputing this: the Assignment called it the "Proposed Septic Easement," implying that the easement was not final, (ECF No. 127-3, at 5), the recorded easement is different from the one they saw at the time of the Assignment, (ECF No. 136-2, at 2), and the Perkins allege that they would not have purchased the property if they had known the extent of the easement, (*Id.* at 3).  Second, Sandy Spring argues that it was "not responsible for and had no control over the location or size of the septic easement."[2]  (ECF No. 127-1, at 12).  The record, however, shows Sandy Spring's Mimi Kress discussing the easement drafting with a Paragon Senior Vice President, (ECF No. 130-5, at 4), and the Eyals, (ECF No. 130-6, at 9), such that a material dispute remains about Sandy Spring's role in drafting the easement.  Finally, Sandy Spring raises the emails it sent regarding the easement in the months leading up to

---

[2] Sandy Spring also argues it was "not responsible for installing the septic system."  (ECF No. 127-1, at 13).  The Perkins do not claim otherwise, so this argument is irrelevant.

closing and argues that the Perkins should have asked about the easement at any time during the negotiation process.[3]   (ECF No. 127-1, at 13).   While the emails do discuss the easement being drafted, "a partial or fragmentary statement of fact" can give rise to a fraudulent concealment claim.   See *Singh*, 510 F.Supp.3d at 330 (quoting *Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F.Supp.2d 618, 629 (D.Md. 2003)).   The Perkins have provided evidence that "the version shown on the plan referenced in the Assignment. . . was never created or recorded," and the easement eventually recorded was "subsequently negotiated between [Sandy Spring] as the Seller and [the Eyals] as the Buyers of Lot 39." (ECF No. 136-2, at 2).   Viewing the evidence in the light most favorable to the Perkins, there remains a dispute of material fact on whether the communications from Sandy Spring could support a finding of fraudulent concealment.   The court will deny summary judgment on the fraudulent concealment count.

### 3.   Count VII: Conspiracy

Sandy Spring also moves for summary judgment on the fraudulent conspiracy claim, which the Perkins brought against Sandy Spring, Compass, and Mr. Fleisher.   (ECF No. 1, at 16).   The United States

---

[3] Sandy Spring cites no facts or law to support this obligation on the part of the Perkins.

Court of Appeals for the Fourth Circuit has explained the law on civil conspiracy claims in Maryland:

> Under Maryland law, civil conspiracy is defined as the "combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 385 Md. 1, [24] (2005) (quoting *Green v. Wash. Suburban Sanitary Comm'n*, 259 Md. 206, [221] (1970)) (internal quotation marks omitted). In addition to proving an agreement, "the plaintiff must also prove the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury." *Id*.[ at 25.] The agreement itself is not actionable under Maryland law "but rather is in the nature of an aggravating factor" with respect to the underlying tortious conduct. *Id*. Indeed, the Maryland Court of Appeals has consistently maintained that "conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, [189] (1995) (quoting *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs.*, 336 Md. 635, [645 n.8] (1994)) (internal quotation marks omitted).

*Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014). A fraudulent concealment claim can be an overt act that supports a conspiracy claim. *See Hill v. Brush Engineered Materials, Inc.*, 383 F.Supp.2d 814, 821-22 (D.Md. 2005) ("Because [plaintiff] asserts her reliance on the fraudulent concealment, [plaintiff] has also alleged sufficient personal damage due to the

conspiracy.").  Relying on circumstantial evidence is not fatal to the claim:

> Civil conspiracy may be proved by circumstantial evidence because "in most cases it would be practically impossible to prove a conspiracy by means of direct evidence alone." *Hoffman*[], 385 Md. [at] 25[] (citation and internal quotation marks omitted).  More specifically, a civil conspiracy
>
>> may be established by inference from the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them, and all the surrounding circumstances preceding and attending the culmination of the common design.
>
> *Id.* at 25–26[] (citation and internal quotation marks omitted).

*Windesheim v. Larocca*, 443 Md. 312, 347-48 (2015).

Sandy Spring first argues that Plaintiffs have "failed to even assert or establish that there was some sort of agreement or understanding between [Sandy Spring] and Marc Fleisher and Compass to take any sort of action that was fraudulent."  (ECF No. 127-1, at 14).  The Perkins have clearly provided circumstantial evidence that there was an agreement or understanding, and the factors from *Windesheim* counsel against summary judgment.  The Perkins have alleged that there was a "collective interest of the alleged conspirators," as Compass and Mr. Fleisher were working with Sandy

20

Spring on finding assignees for both lots.  (ECF No. 127-4, at 58).   The parties were aligned in seeking buyers for the properties, and the Perkins have alleged that they were working together to do so.  In her deposition, Ms. Perkins alleged that Mr. Fleisher pressured the Perkins to sign the assignment structured by Sandy Spring quickly:

> [Ms. Perkins]: Marc Fleisher put a heavy press on us to literally get [the Assignment] back to him within, I think it was like two hours' time, three hours.  He said that there were other people interested in the property and that if we sat on it for too long, he feared we were going to miss out.
>
> [Counsel]: Okay.  And so based on the pressure that Fleisher was putting on you, it was your understanding that you couldn't make changes or suggest changes to the terms of the assignment?
>
> [Ms. Perkins]: Correct.  He said this was put together by Sandy Spring Builders in a specific way, and it was basically take it if you want it.

(ECF No. 127-4, at 14).   Ms. Perkins went on to say that she understood from her conversations with Mr. Fleisher that "[Sandy Spring was] a long-term client of his, and he was representing both [Sandy Spring and the Faller Estate] in the deal because it was going to be financially lucrative for him."   (*Id*. at 67).  Taking the facts in the light most favorable to the Perkins, they have raised a genuine dispute of material fact regarding the conspiracy claim.   Summary judgment will be denied.

21

Second, Sandy Spring argues that there is no underlying tort to support a conspiracy claim. (ECF No. 127-1, at 14). As the court will deny summary judgment to Sandy Spring on the two tort counts described above, this argument is unavailing. The court denies Sandy Spring's motion for summary judgment on the conspiracy claim.

### 4.   Damages

Finally, Sandy Spring argues that the Perkins cannot show *any* damages because "the current septic easement is in the same location as originally anticipated by the parties to the Assignment." (ECF No. 127-1, at 15). This dispute is at the heart of the case; there is evidence that the easement eventually recorded and implemented, (ECF No. 136-2, at 11), is not the same as the easement initially shown to the parties as part of the assignment, (*Id.* at 7). While the easement may be in the same general part of their property, the Perkins have certainly provided evidence to create a genuine dispute on damages. (*See, e.g.*, ECF No. 127-4, at 25).

Sandy Spring also argues that there is no support for the Perkins' prayer for legal costs from the state court litigation against the Eyals, both because there is no statute, rule, or contract that allows for the recovery of attorneys' fees and because they were not the prevailing party. (ECF No. 127-1, at

22

15-16). While Sandy Spring has articulated the standard "American Rule" for awarding attorneys' fees, its argument fails to consider the collateral litigation doctrine, one of Maryland's exceptions to the "American Rule." *E. Shore Title Co. v. Ochse*, 453 Md. 303, 330 (2017). "The collateral litigation doctrine permits Maryland courts to award legal expenses as damages from a separate litigation against another party that was caused by the wrongful acts of the defendant." *Id.* (citing *Empire Realty Co. v. Fleisher*, 269 Md. 278, 286 (1973)). As recounted above, the Perkins have put forth evidence that creates a dispute of material fact about whether their damages were caused by Sandy Spring, and Sandy Spring does not provide any reason why the collateral litigation doctrine could not apply here.

Sandy Spring goes on to challenge the evidence that the Perkins have put forward in support of their damages claims. (ECF No. 127-1, at 15-17). It challenges the evidence that the Perkins' trees were harmed by the septic tank, (*Id.* at 16), and that the Perkins have lost the use and enjoyment of almost an acre of their property, (*Id.* at 17). But the argument itself shows that summary judgment is inappropriate; the Perkins *have* provided evidence of the damage to the trees, (ECF No. 127-4, at 35), and how their use of the property has been impacted, (*Id*. at 25). Sandy Spring's challenges do not overcome the standard at summary judgment, as a

dispute of material fact remains in the record.  Summary judgment will be denied.

###### B.    District Title's Motion for Summary Judgment

District Title moves for summary judgment on negligence (Count VIII), the only count brought against it.  Its arguments for summary judgment are unavailing and will be denied.

In general terms, negligence is the breach of a duty owed to another that proximately caused injury or loss.  Maryland law provides for a tort duty to be found between two parties in some circumstances:

> To determine whether a tort duty exists in a particular context, we examine: (1) "the nature of the harm likely to result from a failure to exercise due care," and (2) "the relationship that exists between the parties." *Jacques*[ *v. First Nat. Bank of Maryland*], 307 Md. [527,] 534[ (1986)]. As we explained further in *Jacques*:
>
>> "Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent. [. . .]
>
> *Jacques*, 307 Md. at 534-35[] (citations omitted).

*100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.,* 430 Md. 197, 213-14 (2013); *see also Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 617-18 (2017).  In

Maryland, "[t]he duty undertaken by the title examiner is to exercise a reasonable degree of skill and diligence in the conduct of the transaction." *100 Inv. Ltd. P'ship,* 430 Md. at 225.

District Title begins by arguing that it had no legal duty to tell Plaintiffs about the easement, because Plaintiffs had signed a document acknowledging that there would be an easement on their property. (ECF No. 132-1, at 6-7). As explained above, Maryland courts have found a duty on the part of title companies, and there remains a genuine issue of material fact about whether showing the final easement to the Perkins as part of closing is a part of the skill and diligence expected. The Perkins point to the deposition of Jeffrey Darrah, an attorney at District Title, who said "I definitely believe it was our obligation at the time of settlement to provide Miss Perkins, buyer's side, with the relevant documents necessary to accomplish closing." (ECF No. 130-3, at 12). District Title makes much of the fact that the Assignment signed by the Perkins stated that an easement was being created, and therefore it could not have known that the easement was not one that the Perkins had seen. (ECF No. 132-1, at 7). But Mr. Darrah noted in his deposition that District Title was aware before closing that the easement was still being drafted, (ECF No. 130-3, at 14), and the Assignment called the attached document a "proposed" easement, (ECF No. 127-3, at 5). There is sufficient

25

evidence to preclude summary judgment on whether failing to show the easement to the Perkins constituted a breach of District Title's duty.

District Title seeks to equate this case to *Iglesias v. Pentagon Title & Escrow, LLC*, 206 Md.App. 624 (2012), (ECF No. 132-1, at 8-9), but *Iglesias* is readily distinguishable.   The plaintiff in *Iglesias* was the victim of identity fraud, and the defendant title company had performed title services for two properties fraudulently purchased in her name.   *Iglesias*, 206 Md.App. at 631-33.   The then-named Court of Special Appeals of Maryland found that the title company had no duty to the *Iglesias* plaintiff, as it was not in contractual privity and had no intimate nexus.   *Id*. at 648, 664.   The relationship between District Title and the Perkins is more akin to the relationship in *100 Investment Ltd. Partnership*, where the court found that an intimate nexus existed between a company in a real estate transaction and the title company completing the title work.   *100 Inv. Ltd. P'ship*, 430 Md. at 222.   As support for the intimate nexus finding, the court noted that the title company was "engaged to issue title commitments" to the company, and the company "expected the Title Companies to conduct a title search exercising reasonable care and skill, and to record the results of such a search."   *Id*. at 222-23.   Additionally, the company "looked to the title

26

commitments and the information detailed by them to discern that the seller had good and marketable title to the land," and "would have then relied on the information obtained by the Title Companies in its title search and as stated in the title commitment to help decide whether it would purchase the land." *Id*. The Perkins interacted with District Title in much the same way as the parties in *100 Investment Ltd. Partnership*, weighing in favor of the imposition of tort liability. The Perkins' preexisting relationship provides additional support for an intimate nexus finding; the Perkins picked District Title specifically because they had prior positive experiences with the company, (ECF No. 127-4, at 51), and stated that they had known Mr. Darrah for years, (ECF No. 136-2, at 1). Because of the many connections between District Title and the Perkins in the record, *Iglesias* is readily distinguishable.

District Title also argues that the alleged harm suffered by the plaintiffs was not reasonably foreseeable. (ECF No. 132-1, at 8). The Perkins have provided enough information to go to the jury on whether the harm was foreseeable. The Perkins noted that they had a preexisting relationship with District Title and had been satisfied with multiple closings they had done with them. (ECF No. 127-4, at 51). They also argue that any property owner would find an easement to be an important aspect of their land,

27

and the jury should decide what is foreseeable. (ECF No. 137, at 4-5). While it is not clear that foreseeability is even required for a jury to find liability in this case, *see 100 Inv. Ltd. P'ship,* 430 Md. at 222 n.15 (noting the foreseeability approach is not the standard for finding a duty in tort in cases involving economic injury, but finding that a trial judge was not clearly erroneous in the foreseeability determination), it is clear that summary judgment is inappropriate on this point.

District Title also argues it was not the proximate cause of Plaintiffs' harm because it did not draft the easement. But the Perkins do not allege that District Title drafted the easement; rather, their negligence theory rests on District Title's obligation to show them the final version of the easement as part of the closing process, and the fact that the easement was not included in their title report. (ECF No. 1, at 19). Given the statements in Mr. Darrah's deposition regarding its obligation to the Perkins as part of closing, (ECF No. 130-3, at 12), the Perkins have raised a genuine issue of material fact.

Finally, District Title argues that an exculpatory provision in the settlement statement addendum precludes any liability.[4]

---

[4] The Perkins do not respond to the argument that the exculpatory clause covers this negligence action against District Title. "Even when faced with an unopposed summary judgment motion, however, the district court is still obligated to 'thoroughly analyze[]' it to ensure that the movant is entitled to judgment as

28

(ECF No. 132-1, at 10).   District Title does not argue that the language in the settlement statement is ambiguous.   Exculpatory clauses are generally valid in Maryland, but the court must conduct a "stringent and exacting" review to determine if the clause at issue truly shields one of the parties from liability.  *Okorie v. Resident Rsch., LLC*, 617 F.Supp.3d 320, 323 (D.Md. 2022).   "To provide a release from liability for claims of negligence, the clause does not need to use that exact word, but its language must 'clearly and specifically indicate[] the intent to release the defendant from liability. . . caused by the defendant's negligence.'"  *Id*. (alteration in original) (quoting *Adloo v. H.T. Brown Real Est., Inc.*, 344 Md. 254, 266 (1996)).

This court previously declined to dismiss the negligence claim based on the language in the contract, (ECF No. 64, at 24), and the court now finds that the possible exculpatory clause identified by District Title does not control here.  District Title points to Section B of the settlement statement addendum, (ECF No.

---

a matter of law." *ClearOne Advantage, LLC v. Kersen*, 756 F.Supp.3d 30, 39 (D.Md. 2024) (alteration in original) (quoting *Maryland v. Universal Elecs., Inc.*, 729 F.3d 370, 380 (4th Cir. 2013); *see also Guzman v. Acuarius Night Club LLC*, 167 F.4th 217, 222 (4th Cir. 2026) (citing the proposition that a lack of opposition to a motion does not remove a court's obligation to ensure summary judgment is warranted as a matter of law to support the same obligation at the motion to dismiss stage).

132-1, at 11), which in part specifies contexts where there is no liability:

> District Title assumes no liability, express or implied, for matters not appearing of record at the time of title examination; for any tax consequences; for notices, or actual violations of any laws, criminal or otherwise, or governmental regulations, ordinances, rules, orders or requirements, issued by any department, office, or any other authority or agency of any local, state, county, or federal government as to ownership occupancy, taxes, zoning, environmental or otherwise; for the terms, or any notice or violation of the terms, of any document(s) to which District Title is not party.

(ECF No. 132-5, at 4). Construing this clause strictly, it does not contemplate tort liability or negligence action; rather, it disclaims liability for actions such as tax assessments and government regulatory enforcement. The clause does not expressly release District Title from negligence claims related to its disclosures at settlement. *See Adloo*, 344 Md. at 268 (clause that protected a real estate company from liability for "vandalism, theft or damage of any nature to the property" related to home showings did not address claims related to the realtors' negligence); *Heat & Power Corp. v. Air Prods. & Chemicals, Inc.*, 320 Md. 584, 593 (1990) (affirming no contractual duty to indemnify petitioner because "the contract did not expressly or unequivocally indemnify [respondent] against its own negligence"). Summary judgment for District Title will be denied.

30

C.    **Compass and Mr. Fleisher's Motion for Summary Judgment**

Compass and Mr. Fleisher[5] move for summary judgment on all counts brought against them: breach of fiduciary duty (Count III), fraudulent misrepresentation (Count IV), fraudulent concealment (Count V), constructive fraud (Count VI), and fraudulent conspiracy (Count VII).  As will be explained, summary judgment will be denied on the fraudulent conspiracy, fraudulent misrepresentation, and fraudulent concealment counts, and granted on the remaining counts.

1.    **Count III: Breach of Fiduciary Duty**

Compass and Mr. Fleisher are entitled to summary judgment on the breach of fiduciary duty claim, as there is no genuine dispute that they did not owe a fiduciary duty to the Perkins.

"To establish a breach of fiduciary duty, a plaintiff must demonstrate: (1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary."  *Plank v. Cherneski*, 469 Md. 548, 559 (2020).  Fiduciary relationships can be created by common law, statute, or contract.  *Id*. at 598.  A fiduciary duty can arise via an agency relationship, which has three elements: "(1) the agent

---

[5] In their joint motion for summary judgment, the defendants note that Mr. Fleisher was acting as an agent of Compass during the transaction at issue in this case.  (ECF No. 133-2, at 2). This agency relationship is undisputed.

31

is subject to the principal's right of control; (2) the agent has a duty to act primarily for the benefit of the principal; and (3) the agent holds a power to alter the legal relations of the principal." *Proctor v. Holden*, 75 Md.App. 1, 20 (1988).  "When an agency relationship is to be inferred from the parties' conduct, the party alleging the agency has the burden of proving its existence and its nature and extent."  *Id*. at 20-21.  Under Maryland law, a real estate broker is an agent that only has fiduciary duties to his or her principal; thus, "in a real estate transaction, a seller's representative does not owe fiduciary duties to the buyer."  *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 256 (4th Cir. 2020) (citing *Lewis v. Long & Foster Real Estate, Inc.*, 85 Md.App. 754, 761-62 (1991)).

The Perkins cannot show a fiduciary relationship with Compass and Mr. Fleisher because the record clearly shows that these defendants represented the seller of the property: the Faller Estate.  (ECF No. 134, at 2).  While the Perkins counter with the fact that they thought Mr. Fleisher and Compass were acting on their behalf, they have not met their burden to establish that an agency relationship existed.  The occasions that the Perkins point to as evidence of the fiduciary relationship they believed they had, such as Mr. Fleisher saying that he would forward a copy of the easement once he had it, (ECF No. 138, at 7), rise only to the

level of a professional seeking to close a deal, not a fiduciary relationship. *See Proctor*, 75 Md.App. at 20 (finding that an alleged "mutually understood inference" was not sufficient to create an agency relationship with a realtor and prospective buyer in the absence of any written or oral agreements, as "good salesmanship and fondness do not an agency make."). The court will grant summary judgment to Compass and Mr. Fleisher on the breach of fiduciary duty claim.

### 2.    Count IV: Fraudulent Misrepresentation

Count IV alleges fraudulent misrepresentation by Compass and Mr. Fleisher related to the alleged statement by Mr. Fleisher that the easement on Lot 40 would not be necessary unless Lot 39 did not pass its percolation test. There is a clear dispute of material fact on whether Mr. Fleisher made this representation to the Perkins. The question is, however, whether the Perkins could rely on this statement, assuming it was made, because their Assignment made clear that there would be an easement on their property.

The Complaint alleges that "Fleisher's misstatements and omissions were made to ensure that the Perkins would not cancel their purchase of Lot 40 because closing both deals in one transaction would result in a higher commission for Fleisher." (ECF No. 1, at ¶ 57). In their opposition, the Perkins contend

33

that Mr. Fleisher's statements regarding the percolation test and that no easement would be needed contributed to keeping the true full scope of the easement from them. (ECF No. 138, at 8-9).

A prior case from this district lays out the law on fraudulent misrepresentation in Maryland:

> To recover damages in a fraud action, a plaintiff must prove the following elements: (1) that the defendant made a false representation to the plaintiff; (2) that the falsity was known to the defendant or made with reckless indifference to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *See e.g., Nails*[ *v. S & R Inc.*, 334 Md. 398, 415 (1994)] (citations omitted) (emphasis added). For a plaintiff to have a right to rely on an alleged misrepresentation, the plaintiff must reasonably believe in the "full truth" of the misrepresentation. *See James v. Goldberg*, 256 Md. 520, [528-29] (1970) (citations omitted).
>
> [. . .]
>
> A person cannot reasonably believe in the full truth of an alleged misrepresentation that directly contradicts the terms of a contract to which the person is a signatory. *James*, [256 Md. at 529-30].

*Bank of Am., N.A.*, 822 F.Supp.2d at 536-37.

Compass and Mr. Fleisher focus their argument on whether the Perkins' could have reasonably believed a representation that the easement may not be necessary, as they argue it contradicted the

terms of the Assignment and associated documents.  (ECF No. 133-2, at 18).  The Assignment was a forward-looking document, however, outlining an easement (with a scope still defined as "proposed") as one of the contingencies.  (ECF No. 127-3, at 4-5).  The Perkins had the option, based on the Assignment, to walk away from the deal before closing with a financial penalty.  (ECF Nos. 136, at 14; 127-3, at 3).  The Perkins allege that Mr. Fleisher made the misrepresentation multiple times before closing, including reporting that the percolation test was passed in July.  (ECF No. 136-2, at 3, and 187).  The Perkins contend that, if they had known that an easement was in fact required and would be of the scope eventually recorded, they would have exercised their right under the Assignment to not go to settlement.  There remain disputes of fact, precluding summary judgment on this claim.

### 3.    Count V: Fraudulent Concealment

Count V alleges fraudulent concealment by Compass and Mr. Fleisher because they failed to inform the Perkins of (1) the updated parameters of the easement, (2) the rights granted to the Eyals to fence off that portion of the property, and (3) that the Eyals intended to construct a septic system on Lot 40 even if Lot 39 passed the relevant tests.  (ECF No. 1, at 14).  The court will deny summary judgment on this claim; taking the evidence in the

light most favorable to the Perkins, a dispute of material fact remains.

As explained above, a fraudulent concealment claim has five elements: (1) the duty to disclose a material fact, (2) failure to disclose that fact, (3) the intent to defraud or deceive, (4) justifiable reliance, and (5) damages.  *See My Nat. Tax & Ins. Servs., Inc. v. H & R Block Tax Servs., Inc.*, 839 F.Supp.2d 816, 820 (D.Md. 2012).   In cases where there is no fiduciary relationship, the plaintiff must prove "that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence." *Id*. (citing *Lloyd*, 397 Md. at 139).  The court has already determined that the Perkins did not have a fiduciary relationship with Compass and Mr. Fleisher.

Compass and Mr. Fleisher make three arguments in support of summary judgment on this count.  First, the parties argue that they clearly disclosed the updated version of the easement, as they updated the Perkins on the status of the easement multiple times between the time of the Assignment and the actual closing. (*See, e.g.*, ECF Nos. 134-3, at 37-38; 136-2, at 187).  Second, they argue that they had no obligation to provide the Perkins with a copy of the final easement.  (ECF No. 133-2, at 21).  Third, they argue that "the overwhelming evidence is that had [the

Perkins] exercised due diligence in simply requesting a copy of the easement, it would have been provided forthwith." (*Id*. at 22).

The Perkins counter that they had been told that an easement would not actually be necessary, and that they expected any easement would reflect the parameters attached to the Assignment document. (ECF No. 136-2, at 3). The Perkins point to an email from Mr. Fleisher confirming that the "percolation test passed," leading them to believe that the easement would not be necessary based on the prior alleged statements from Mr. Fleisher. (ECF No. 136-2, at 187). Finally, they argue that Mr. Fleisher did have an obligation to send the easement to them because he said he would do so. (ECF No. 134-4, at 9 (Email from Mr. Fleisher with the following statement: "As soon as we know that the easement language has been drafted per the terms of the contract, we will forward it to you asap")). Reviewing the facts in the light most favorable to the nonmoving party, the Perkins have raised a genuine dispute of material fact. Summary judgment will be denied.

### 4.   Count VI: Constructive Fraud

"A defendant commits constructive fraud against a plaintiff where the defendant 'breach[es] a legal or equitable duty' to the plaintiff in a way that 'tend[s] to deceive others, to violate public or private confidence, or to injure public interests.'"

*Thompson v. UBS Fin. Servs., Inc.*, 443 Md. 47, 69 (2015) (alteration in original) (quoting *Canaj, Inc. v. Baker & Div. Phase III, LLC*, 391 Md. 374, 421-22 (2006)).  "[A] defendant owes an equitable duty to a plaintiff where the parties are in a confidential relationship," which arises when "the defendant 'has gained the [plaintiff's] confidence. . . and purports to act or advise with the [plaintiff]'s interest in mind.'"  *Id*. at 69-70 (first alteration added) (quoting *Buxton v. Buxton*, 363 Md. 634, 654 (2001)).

Compass and Mr. Fleisher are entitled to summary judgment on this point.  There cannot be a confidential relationship between the Perkins and Mr. Fleisher because Mr. Fleisher represented the sellers in this transaction.  "Absent the knowing consent of the parties to a real estate transaction, the broker's fiduciary relationship with his client precludes . . . representing both sides in the transaction.  This is so because, ordinarily, the interests of the parties on the two sides of such a transaction are diametrically opposed."  *Wilkens Square, LLLP v. W.C. Pinkard & Co.*, 189 Md.App. 256, 268 (2009), *aff'd*, 419 Md. 173 (2011).  Because Mr. Fleisher and Compass had a fiduciary relationship with the Faller Estate, (*see* ECF No. 134, at 2), they had a clear duty to the sellers in this transaction and could not have had any duty to the buyers as a result.  *See Proctor*, 75 Md. App. at 21 ("The

38

broker cannot act for both the seller and buyer in the same transaction because of the potential conflict of interest."); *see also Chaires v. Champion Realty*, No. 193, Sept. Term, 2024, 2025 WL 2525713, at *5-*6 (Md.Ct.Spec.App. Sep. 2, 2025) (referring to the idea that a real estate broker's liability is founded on agency as "well-settled in Maryland law," and holding that the seller's agent owed no duty to the buyer).   Summary judgment will be granted.

### 5.    Count VII: Conspiracy

The Perkins allege a fraudulent conspiracy by Sandy Spring, Compass, and Mr. Fleisher, specifically that they "failed to disclose all material facts about the negotiated septic easement, allowing the Perkins to believe that construction of a septic system was unlikely and that if an easement was actually imposed on their property, it would not disturb their enjoyment of their land."  (ECF No. 1, at 18).  As described in response to Sandy Spring's motion for summary judgment on the fraudulent conspiracy claim, the Perkins have provided enough information regarding inferences about the defendants to survive summary judgment.

Like Sandy Spring, Compass and Mr. Fleisher argue that plaintiffs "cannot show either an unlawful act or unlawful means to accomplish an act that is not itself illegal."  (ECF No. 133-2, at 24).  This argument is unavailing.  Plaintiffs do not have

39

"to allege or prove that each member of the conspiracy committed some independent unlawful act in furtherance of the agreement, only that one or more of them committed such an act and that harm ensued to the plaintiff as a result." *Aarow Elec. Sols. v. Tricore Sys., LLC*, 693 F.Supp.3d 525, 542 (D.Md. 2023) (quoting *Alleco*, 99 Md.App. at 708).   Because tort claims against Compass, Mr. Fleisher, and alleged co-conspirator Sandy Spring are allowed to proceed, the conspiracy claim will be allowed to move forward as well.

### D.   Paragon Title's Motion for Summary Judgment

Paragon Title ("Paragon") moves for summary judgment on all four counts remaining in District Title's third-party complaint (ECF No. 69): indemnification (Counts I and II), contribution (Count III), and negligence (Count IV).  (ECF No. 130, at 10-12).

Paragon contends that the facts are not in dispute that District Title was hired in its stead to conduct the settlement in May 2020, before the Assignment in June, that Paragon transferred its files to District Title on or about July 28, 2020, and that Paragon did not prepare the septic easement.  District Title argues that it and Paragon should be treated equally with regard to any duty to disclose the existence of the easement to the Perkins.  It points to responses to requests for admission by Compass that there were communications with Paragon about the easement, that Paragon

40

was initially the title company for Sandy Spring, and that the Perkins were aware of the easement prior to the transfer of files from Paragon to District Title. It contends that Paragon remained involved after the earlier agreement signed in June, according to Ms. Perkins deposition.

None of that matters, however. Because District Title has not provided any facts supporting its assertion that Paragon drafted the final easement or even was involved at the time it was drafted, or had any knowledge of the final easement, summary judgment in Paragon's favor is appropriate.

### 1.   Counts I and II: Indemnification

District Title brings claims for indemnification (Count I) and equitable indemnification (Count II). (ECF No. 69, at 4-5).[6] As there has been no argument that a contractual or statutory right to indemnity is present here, the court considers whether a right to indemnity arose by implication. *See Pulte Home Corp. v. Parex, Inc.*, 403 Md. 367, 381-82 (2008). Specifically, District Title seeks "complete common law tort indemnification" for "any

---

[6] The two indemnification counts have been treated jointly throughout the litigation, including in the briefing for this motion for summary judgment. (*See, e.g.,* ECF Nos. 110, at 7 n.3; 130, at 10-11). Because neither Paragon nor District Title has treated these as two separate claims, and District Title has only presented one basis for a right to indemnity, the court will discuss them together.

liability assessed against District Title in favor of Plaintiff."

(ECF No. 69, at 6).  In Maryland:

> the "active/passive" negligence rule applies,
> by which a defendant whose negligence was
> "passive" may seek indemnity from a defendant
> whose negligence was "active."

*Richards v. Freeman*, 179 F.Supp.2d 556, 560 (D.Md. 2002).  While there is no bright-line rule for determining if negligence is active or passive, "the distinction between active and passive negligence turns on whether the third-party plaintiff was negligent or whether its liability is entirely dependent on the negligence of another defendant."  *Potomac Elec. Power Co. v. Midwest Mole, Inc.*, No. 19-CV-03037-AAQ, 2022 WL 17362679, at *6 (D.Md. Dec. 1, 2022).  In their complaint, Plaintiffs allege that District Title breached its duty by "failing to notify the Perkins of the size and terms of the easement after it was notified of the easement in its correspondence with [Sandy Spring] and Fleisher," and by failing "to make any mention of the easement in its title report."  (ECF No. 1, at 19).

Paragon is entitled to summary judgment on the indemnification issue.  There is no evidence that Paragon was negligent in the failing to give notice of the eventual easement to the Perkins, simply because that version did not exist when Paragon was involved.  Moreover, there is no situation where District Title's tort liability is purely passive.  In his

deposition, Jeffrey Darrah of District Title said he had no personal knowledge of who drafted the easement, (ECF No. 130-3, at 21), and that an attorney for the Faller Estate dropped the easement off at his office, (*Id.* at 8).  Paragon Vice President Dick Fritts specifically declined to draft the septic easement when asked by Mimi Kress from Sandy Spring, because he had no experience doing so.  (ECF No. 130-5, at 4).  The easement was provided to District Title by the seller's agent, and it is undisputed that Paragon did not draft the easement at issue.  The facts District Title raises in support of its position do not allege that Paragon drafted the easement at issue – rather, they affirm that Paragon was involved in the earlier part of the transaction but passed the file on to District Title when the parties decided to change title companies.  (ECF No. 135-1, at 3-4).  It is undisputed that District Title handled the actual closing, and that the Perkins requested that the title company change to District Title.  District Title's repeated attempts to characterize the easement as the "Paragon easement" are conclusory and unavailing.  The court will grant summary judgment to Paragon on the indemnity claim.

### 2.   Count III: Contribution

Maryland recognizes a right of contribution among joint tort-feasors, Md. Code Ann., Cts. & Jud. Proc. § 3-1402 (West), which

43

is defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."  *Id.* § 3-1401(c).  Contribution "'rests on common liability, not on joint negligence or joint tort.  Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds.'" *Richards*, 179 F.Supp.2d at 560 (quoting *Parler & Wobber v. Miles & Stockbridge*, *P.C.*, 359 Md. 671, 687 (2000)).

There is no genuine dispute of material fact about Paragon's liability to the Perkins.  The initial version of the easement was drafted and attached to the Assignment while Paragon held the file related to the purchase in mid-June 2020, and the Perkins were aware of that possible easement.  (*See* ECF No. 130, at 3).  At the Perkins' request, Paragon then handed the file over to District Title.  (*Id.* at 4).  Before settlement, District Title received a copy of the updated easement from Joshua Headley, counsel for the Faller Estate.  (*Id.*).  District Title then handled the closing for the properties on September 18, 2020.  (*Id.* at 5).  It is undisputed that the easement was changed after Paragon passed the file to District Title.  Because Paragon's involvement had ended by the time the disputed easement was drafted, it could not have

44

any liability to the Perkins for the final version of the easement. Summary judgment will be granted.

### 3.   Count IV: Negligence

Finally, Paragon moves for summary judgment on District Title's negligence claim.  (ECF No. 130, at 12).  Paragon argues that District Title has failed to establish that it owed any duty to District Title, it did not conduct the settlement, and it did not draft the easement.  (*Id.*)

As described above, a duty in tort for purely economic injury between parties not in contractual privity must stem from an "intimate nexus."  *100 Inv. Ltd. P'ship*, 430 Md. at 214.  There is no indication that Paragon and District Title had an intimate nexus.  The parties are competitors – both title companies that handle similar business – and the file was handed over to District Title at the request of the Perkins.  The court will grant summary judgment to Paragon on the negligence count.[7]

### 4.   Costs, Attorneys Fees

Paragon argues that it "should be awarded its fees and expenses incurred in defending the entirely frivolous and baseless Third-Party Complaint."  (ECF No. 130, at 13).  The court applies

---

[7] Paragon also argues that Count IV is time-barred.  (ECF No. 130, at 12).  Because the court finds that Paragon is entitled to summary judgment on this count, it will not reach the question of whether this count is time-barred.

Maryland law to determine if attorneys' fees and costs are warranted. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 631 (4th Cir. 1999). Maryland follows the "American Rule," which states each litigant pays his or her own costs and attorneys' fees unless a statute or contract provides otherwise. *E. Shore Title Co.*, 453 Md. at 329-30.

> However, in Maryland, there are four exceptions to the American Rule, and an award for attorney's fees is permitted (1) where a statute allows for the recovery of attorney's fees; (2) where the parties to a contract have an agreement regarding attorney's fees; (3) where the wrongful conduct of a defendant forces a plaintiff into litigation with a third party; or (4) where a plaintiff in a malicious prosecution action can recover damages from the defense of the criminal charge.

*Id.* at 330. Paragon provides no argument as to why an award of attorney's fees may be appropriate here. The court declines to grant any costs or fees, beyond those costs other than attorney's fees available pursuant to Fed.R.Civ.P. 54(d)(1) and 28 U.S.C. § 1920. The Clerk will tax those costs at the conclusion of the case upon the filing of a Bill of Costs by the prevailing parties.

### E.    Compass DMV and Marc Fleisher's Motion for Leave to Name Expert Out of Time

Finally, the motion for leave to name expert out of time filed by Compass and Mr. Fleisher will be granted. (ECF No. 121). As alluded to in the motion, the court previously issued a scheduling

order that required Defendants to disclose experts under Fed.R.Civ.P. 26(a)(2) by April 5, 2025. (ECF No. 97). While the parties style the motion as one for leave to name an expert out of time, citing both Fed.R.Civ.P. 26(a)(2)(D) and Fed.R.Civ.P. 37(c)(1), the body of their motion includes a request that the court reopen discovery "for the limited purpose of permitting any party to depose Defendants' expert, David Thurston, and designate an expert of their own if they wish to do so." (ECF No. 121, at 5). None of the other parties in the case opposed the motion or responded at all.

Another court in this district previously described the interplay between Fed.R.Civ.P. 26(a)(2) and Fed.R.Civ.P. 37:

> Because plaintiffs did not timely comply with Rule 26(a)(2)(C), Fed.R.Civ.P. 37 is implicated. Rule 37 "'gives teeth' to the Rule 26(a)(2) requirements by 'forbidding a party's use of improperly disclosed information at a trial, at a hearing, or on a motion, unless the party's failure to disclose is substantially justified or harmless.'" *Barnett v. United States*, []20-[cv]-2517-DCN, 2021 WL 5888542, at *2 (D.S.C. Dec. 13, 2021) (quoting *Tokai Corp. v. Easton Enters.*, 632 F.3d 1358, 1365 (Fed. Cir. 2011)).
> []
> Fed.R.Civ.P. 37(c)(1) provides, in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See Bresler[v. Wilmington Tr. Co.]*, 855 F.3d [178,] 190[ (4th Cir. 2017)];

47

>    *S. States Rack & Fixture, Inc. v. Sherwin-*
>    *Williams Co.*, 318 F.3d 592, 596 (4th Cir.
>    2003).

*Allegis Grp., Inc. v. Bero*, 689 F.Supp.3d 81, 110 (D.Md. 2023), *aff'd*, No. 23-2023, 2025 WL 2141298 (4th Cir. July 29, 2025).  When determining if the failure was substantially justified or harmless, courts apply five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture*, 318 F.3d at 597.

Applying the *Southern States* factors to the motion, the failure to disclose this evidence earlier is both substantially justified and harmless.  It cannot be a surprise to District Title that another defendant may seek to introduce its own evidence about the obligation of a title company.  Additionally, no party has filed anything describing their surprise at this additional evidence or any harm that could come from introducing it.  If this expert is a surprise, the parties now have the expert disclosure, (ECF No. 122-1), and Compass and Mr. Fleisher have requested that the court reopen discovery to give the other parties sufficient opportunity to respond to the new expert disclosure.  Trial has not even been scheduled in this matter, so there can be no

48

disruption to the trial.  The evidence the moving parties seek to introduce strikes at the core question of the case: which party was responsible for disclosing the updated easement.  Finally, the moving party's explanation for not disclosing this expert earlier is reasonable.  Due to scheduling conflicts and a departing attorney for another party, the parties did not hold a deposition of District Title attorney Jeffrey Darrah until July 18, 2025.  According to the motion, Mr. Darrah "testified that District Title had no responsibility to provide said unrecorded easement to the Perkins at or before settlement."  (ECF No. 121, at 2).  Just seven days after the deposition, Compass and Mr. Fleisher filed a motion identifying an expert who they intend to offer "to refute the testimony of District Title's attorney."  (*Id*. at 3).  Given the facts here and the lack of opposition from other parties, the failure to disclose the expert earlier was both substantially justified and harmless.  The court will grant the motion to name an additional expert.

Re-opening discovery is one option to cure a party's late disclosure of an expert, rather than resorting to the extreme remedy of excluding the expert witness testimony at issue.  *See Wiseman v. Walmart Stores, Inc.*, No. 16-cv-04030-SAG, 2017 WL 2865013, at *3 (D.Md. July 5, 2017).  Compass and Mr. Fleisher cite to one case outside of this circuit for a six-part test on

49

whether to re-open discovery.  (ECF No. 121, at 3 (citing *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 138 F.Supp.3d 1, 2 (D.D.C. 2015))).  In this district,

> [t]he court has discretion in deciding whether to reopen discovery upon the request and a showing of good cause by a party.  *See* Fed.R.Civ.P.  16(b)(4).   "The primary consideration of the court in addressing whether 'good cause' has been shown under Rule 16(b) relates to the movant's diligence." *Edwards v. Edwards*, []12-[cv-]3761[-DKC], 2014 WL 1573504, at *3 (D.Md. Apr. 18, 2014) (citing *Montgomery v. Anne Arundel Cnty., Md.*, 182 F.App'x 156, 162 (4th Cir. 2006) (per curiam)).

*InfoTek Corp. v. Preston*, 626 F.Supp.3d 885, 896 (D.Md. 2022).

The court finds good cause to reopen discovery for "the limited purpose of permitting any party to depose Defendants' expert, David Thurston, and designate an expert of their own if they wish to do so."  (ECF No. 121, at 5).  As described above, Compass and Mr. Fleisher acted quickly and diligently after Mr. Darrah's rescheduled deposition to disclose an additional expert. As trial has not yet been scheduled in this case, reopening discovery for the limited purpose requested by the movants will not disrupt an existing timeline and will allow all parties to make their argument more fully at trial.  The court will reopen discovery for the limited purpose of any depositions of Compass and Mr. Fleisher's new expert, David Thurston, and the parties designating any other expert in response.

50

**IV.   Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Sandy Spring will be denied; the motion for summary judgment filed by District Title will be denied; the motion for summary judgment filed by Compass and Mr. Fleisher will be denied in part and granted in part; the motion for summary judgment filed by Paragon will be granted; and the motion for disclosure of an expert out of time filed by Compass and Mr. Fleisher will be granted.  A separate order will follow.

                                                               _____/s/_____
DEBORAH K. CHASANOW
United States District Judge