IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JESSIE PERKINS, et al. | : | |
| v. | : | Civil Action No. DKC 23-1823 |
| SANDY SPRING BUILDERS, LLC, et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this dispute over a property easement are five motions in limine filed or adopted by Defendants Compass DMV, LLC ("Compass") and Marc Fleisher (collectively "Compass Defendants"). (ECF Nos. 166; 167; 168; 169; 170). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to exclude the testimony of Edgar Trujillo (ECF No. 166) will be denied as moot; the motions to exclude or limit testimony of C. Edward Hartman, III (ECF Nos. 167; 170) will be granted; the motion to preclude or limit testimony of Michael J. Chicorelli with respect to tree damage and insurance (ECF No. 168) will be granted; and the motion to preclude the assertion for punitive damages (ECF No. 169) will be denied.

## I. Background[1]

The background of this case has been set forth in detail in prior decisions of this court. (ECF Nos. 64; 110; 145). Plaintiffs Jessie and James Perkins ("the Perkins" or "Plaintiffs") bring fraud claims against the Compass Defendants and a negligence claim against Defendant District Title, A Corp. ("District Title"), arising from a 2020 sale of real property.

In or around spring 2020, the Estate of Charles Sidney Faller, Jr. ("Faller Estate") sought to sell the property located at 10819 (Lot 39) and 10821 (Lot 40) Alloway Drive, Potomac, Maryland 20854. (ECF No. 145, at 2). The Faller Estate entered into a contract with Sandy Spring Builders, Inc. ("Sandy Spring") for both lots in May 2020. (*Id.*). The contract designated Sandy Spring and/or the Assigns as the buyer and identified Compass as the broker for the seller (the Faller Estate). (*Id.*). On the signature page of the contract, Mr. Fleisher and Compass were listed as the Listing Agent and Selling Agent. (*Id.*).

The Perkins expressed interest in Lot 40 to Mr. Fleisher around May 2020. (*Id.*). As part of the discussions around the purchase of the property, Mr. Fleisher told the Perkins about the provision in the contract for a septic easement on Lot 40 for the

[1] The facts herein are undisputed unless otherwise noted.

benefit of Lot 39. (*Id.* at 3). The Perkins allege that Mr. Fleisher told them the septic easement would not be necessary if Lot 39 passed its percolation test. (*Id.*). Mr. Fleisher denies making such a statement. (*Id.*). Following these conversations, the Perkins executed an assignment with Sandy Spring for the right to purchase Lot 40. (*Id.*).

After the Perkins signed the assignment, a new and more extensive easement was drafted. The updated version of the easement was delivered to District Title on September 11, 2020. (ECF No. 145, at 4). District Title did not provide the Perkins with a copy of the updated easement. (*Id.*). While the circumstances of the drafting are disputed, it is undisputed that the Perkins were unaware of the changes to the easement when they closed on the purchase on September 18, 2020. (*Id.*). This version of the easement was recorded on November 5, 2020. (*Id.* at 5).

The Perkins discovered the recorded version of the easement several months after closing, and litigation ensued. (ECF No. 145, at 5). Relevant here, on July 7, 2023, the Perkins filed a complaint against District Title, the Compass Defendants, and Sandy Spring. (ECF No. 1). Judgment was entered against Sandy Spring on November 2, 2026, pursuant Fed.R.Civ.P. 68. (ECF No. 184). Fraud claims against the Compass Defendants and a negligence claim against District Title remain. (*See* ECF No. 145).

On October 19, 2026, Sandy Spring filed four motions in limine. (ECF Nos. 166; 167; 168; 169). The Compass Defendants adopted the motions in the joint pretrial order. (ECF No. 171, at 28). The Compass Defendants filed their own motion in limine on the same topic as ECF No. 167. (ECF No. 170). All parties have had the opportunity to file briefs regarding the motions. (*See* ECF Nos. 185–87; 192–95).

## II. Motion to Exclude Testimony of Edgar Trujillo (ECF No. 166)

Compass Defendants seek to exclude the testimony of the Perkins' witness Edgar Trujillo. (ECF No. 166). The Compass Defendants assert that Mr. Trujillo was identified as a potential witness for the first time in drafts of the joint pretrial order circulated on September 25, 2026. (*Id.* at 2). On November 3, 2026, the Perkins withdrew their designation of Mr. Trujillo as a witness. (ECF No. 185). Accordingly, the motion to exclude Mr. Trujillo will be denied as moot.

## III. Motions to Exclude or Limit Testimony of C. Edward Hartman, III (ECF Nos. 167, 170)

Discovery in this case was set to close on May 21, 2025. (ECF No. 97). In 2026, the court ordered a limited reopening of discovery to permit the Compass Defendants to designate David Thurston as an expert witness. (*See* ECF No. 157, at 3). Mr. Thurston was proposed "as an expert to testify that District Title *did* have a duty to disclose the expanded easement to the Perkins"

in response to recently disclosed testimony suggesting the contrary. (*Id.* at 4–5). The court permitted the parties to depose Mr. Thurston and to “designat[e] any other expert in response.” (ECF No. 146, at 2).

The Perkins designated Mr. Hartman as an expert witness in response to Mr. Thurston. (*See* ECF No. 151-2). Mr. Hartman’s report largely focused on the duties of Compass and Mr. Fleisher and did not offer an opinion on the duties of District Title. (*See id.*). The report also provided legal interpretations and conclusions. (*See id.* at 3).

The Compass Defendants and Sandy Spring filed motions to strike the disclosure of Mr. Hartman as a witness. (ECF Nos. 150; 151). Their primary arguments were that (1) Mr. Hartman’s designation was untimely and not substantially justified, (ECF Nos. 150, at 5; 151, at 3); and (2) Mr. Hartman’s designation was inappropriately broader than just rebutting the testimony of Mr. Thurston, (ECF Nos. 150, at 4; 151, at 2).

The court issued an order on July 21, 2026, granting the motions to strike as they pertained to Mr. Hartman’s opinions on the law. (ECF No. 158). As for Mr. Hartman’s remaining testimony, the court held that “[w]hether the designation of Mr. Hartman is timely under Fed.R.Civ.P. 26(a)(2)(D)(ii) depends on whether he is a rebuttal witness.” (ECF No. 157, at 7). Although the court was

"skeptical" that Mr. Hartman's report could be considered a rebuttal to Mr. Thurston, a final determination was reserved until the court could review the scope of Mr. Thurston's deposition or full expert report. (*Id.* at 8–9). Mr. Thurston's deposition and expert report have now been provided to the court, and the motions to exclude are ready for decision. (*See* ECF Nos. 170-1; 170-2).

As a rebuttal witness, Mr. Hartman must "rebut evidence on the same subject matter identified by another party." *Deque Sys. Inc. v. Browserstack, Inc.*, 177 F.4th 585, 595 (4th Cir. 2026) (quoting Fed.R.Civ.P. 26(a)(2)(D)(ii)). "Rebuttal evidence is defined as '[e]vidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party. That which tends to explain or contradict or disprove evidence offered by the adverse party.'" *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001) (quoting Black's Law Dictionary 1267 (6th ed. 1990)). Thus "there must be a nexus" between the rebuttal and the evidence to be rebutted. *Id.*

Mr. Thurston's report and deposition testimony are narrowly focused on whether District Title owed and breached a duty to the Perkins. (*See* ECF Nos. 170-1, at 2-3; 170-2, at 4). At his deposition, Mr. Thurston declined to offer opinions on whether any other party owed a duty to the Perkins. (ECF No. 170-2, at 6, 8).

The Perkins concede the limited scope of Mr. Thurston's testimony. (ECF No. 186, at 2).

Mr. Hartman's testimony says nothing about District Title's duty to the Perkins. Accordingly, it is not "on the same subject matter" as Mr. Thurston's testimony and cannot be considered rebuttal. *Deque Sys.*, 177 F.4th at 595. The Perkins argue that Mr. Hartman's testimony is rebuttal because "[a]n implication of [Mr. Thurston's] testimony that the jury could incorrectly draw is that because one participant had that obligation, others did not." (ECF No. 186, at 2). The Perkins assert that Mr. Hartman must be allowed to clarify that the existence of District Title's duty did not relieve other professionals of a duty. (*Id.* at 3). However, rebuttal does not mean addressing phantom implications that a jury could incorrectly draw. Mr. Hartman's testimony does not explain, repel, counteract, or disprove the content of Mr. Thurston's testimony, and therefore he is not a rebuttal witness. *Stitt*, 250 F.3d at 897.

If asked at trial, apparently Mr. Thurston will state that he is not expressing any opinion of the duty of any other professionals. This will be sufficient to satisfy the Perkins' concerns about jury confusion. For the foregoing reasons, the motions to exclude Mr. Hartman's testimony will be granted.

**IV. Motion to Exclude or Limit Testimony of Michael J. Chicorelli (ECF Nos. 168)**

The Compass Defendants seek to preclude or limit testimony of the Perkins' expert witness Michael J. Chicorelli with respect to tree damage and insurance. (ECF No. 168). Mr. Chicorelli "is a licensed real estate appraiser" offering an opinion on "the diminution in value" of the Lot 40 property due to the easement and its effects. (ECF No. 187, at 1, 3). He states that his report was prepared "in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP) of the Appraisal Foundation" and other professional guidelines. (ECF No. 168-1, at 12). To reach a valuation of the underlying land, Mr. Chicorelli employed a "sales comparison approach," in which he compared Lot 40 to similar properties, "adjusting for differences between the subject property and the comparable properties." (*Id.* at 39). The Compass Defendants do not challenge this aspect of his testimony. For portions of the property impacted by the easement, Mr. Chicorelli employed a "cost approach," which works on the principle "that a prudent purchaser would not pay more for a property than the amount required to purchase a similar site and construct similar improvements without undue delay, producing a property of equal desirability and utility." (*Id.*). Apparently pursuant to the cost approach, Mr. Chicorelli deducted from the overall property valuation the cost of removing and replacing trees

impacted by the easement and the cost of additional insurance. (*See id.* at 59).

Mr. Chicorelli's report proceeded under the assumption that "the reports and findings of other professionals relied on for purposes of our appraisal report are accurate." (ECF No. 168-1, at 4). Mr. Chicorelli stated in his deposition that it is a reliable method to rely on the estimates and reports of other experts and professionals, and he had done so "many times in the past". (ECF No. 168-2, at 15, 17). Accordingly, his valuation of Lot 40 under the cost approach relied in part on (1) an estimate from Ruppert Companies ("Ruppert") calculating the replacement value of the damaged trees as $307,500; (2) quotes from two tree removal companies for the cost of removing four and nine trees, respectively; and (3) a quote from an insurance company for the cost of additional insurance due to the easement. (ECF No. 168-1, at 56, 58). The Compass Defendants argue that the use of these estimates and quotes is unreliable and must be excluded under Fed.R.Evid. 702 and the *Daubert* test. (ECF No. 168 at 6 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

**A. Legal Standard**

Rule 702 states that a qualified expert witness may provide opinion testimony

> if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert’s opinion reflects a reliable application of the principles and methods to the facts of the case.

Rule 702 incorporates a relevance requirement and “imposes a special gatekeeping obligation on the trial judge to ensure that an opinion offered by an expert is reliable.” *Nease v. Ford Motor Co.*, 848 F.3d 219, 229, 230 (4th Cir. 2017).

When analyzing Rule 702, the *Daubert* test provides “guideposts to help a district court determine if expert testimony is sufficiently reliable to be admissible." *Id.* at 229. These guideposts include:

> (1) whether the expert’s theory or technique “can be (and has been) tested”; (2) “whether the theory or technique has been subjected to peer review and publication”; (3) “the known or potential rate of error” inherent in the expert’s theory or technique; and (4) whether the expert’s methodology is generally accepted in his field of expertise. *Nease*, 848 F.3d at 229 (quoting *Daubert*, 509 U.S. at 593–94[]). But this list “neither necessarily nor exclusively applies to all experts or in every case,” as the relevance of some factors can “depend[] on the nature of the issue, the expert’s particular expertise, and the subject

> of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 150[] (1999).

*Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021).

The court must also scrutinize the expert's application of scientific principles and methods to the facts of the case. *Near v. Enerco Grp., Inc.*, 182 F.4th 341, 360 (4th Cir. 2026).

> To be reliable, the opinion must not have "too great an analytical gap" between the expert's conclusion and the data that allegedly supports it. [*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, (1997)]. "[N]either *Daubert* [n]or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 137[]. In other words, expert opinions must be based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590[]; *accord* [*Hickerson v. Yamaha Motor Corp*, 882 F.3d 476, 482 (4th Cir. 2018)].

*Near*, 182 F.4th at 360.

In *Near*, the United States Court of Appeals for the Fourth Circuit affirmed the exclusion of an expert who formed opinions about the safety of a propane tank top heater despite seeing "the heater operate only during a videoconference call." *Id.* at 360–61. Being unable to stand near the heater and feel its heat, among other deficiencies, prevented the expert from reliably determining what safety warnings would be necessary to a user. *Id.* at 361. Similarly, in *O'Connor v. Fairfax Taxi, Inc.*, the Fourth Circuit affirmed the exclusion of expert testimony that a car driver could

have swerved to avoid a collision because the opinion "depended on facts that the record did not supply: a clear right lane, enough time for [the driver] to perceive danger, and enough distance for braking or steering." 188 F.4th 336, 354 (4th Cir. 2026). The court reasoned that "[a]n opinion that supplies through assumption the very facts the record omits is not 'based on sufficient facts or data.'" *Id.* (quoting Fed.R.Evid. 702(b)).

There are limits to this scrutiny, however.

> While courts may exclude an expert opinion under Federal Rule of Evidence 702 if it is not based on "*sufficient* facts or data," Fed. R. Evid. 702(b) (emphasis added), "questions regarding the factual underpinnings of the expert witness' opinion affect the weight and credibility of the witness' assessment, not its admissibility," *Bresler v. Wilmington Tr.*, 855 F.3d 178, 195 (4th Cir. 2017) (quoting *Structural Polymer Grp. v. Zoltek Corp.*, 543 F.3d 987, 997–98 (8th Cir. 2008)) (cleaned up).

*Mountain Valley Pipeline, LLC v. 9.89 Acres of Land,* 127 F.4th 437, 445–47 (4th Cir. 2025). For example, in *Sommerville v. Union Carbide Corp.*, the Fourth Circuit held that a district court could not exclude an expert because it "disagreed" with his choice of data sets. 149 F.4th 408, 424 (4th Cir. 2025), *cert. denied,* 146 S.Ct. 2677 (2026); *see also Bresler*, 855 F.3d at 195–96 (affirming denial of a *Daubert* challenge that "amount[ed] to a disagreement with the values [an expert] chose to assign to certain variables").

**B. Reliability of Mr. Chicorelli's Opinions on Tree Replacement**

The Compass Defendants challenge Mr. Chicorelli's reliance on an email from Ruppert estimating the cost of installing thirty-two large trees. (ECF No. 168-1, at 95). Working from a list of trees provided by Ms. Perkins, Ruppert estimated that each tree would cost between $4,000 and $10,500 to install, for a total of $307,500. (*Id.*). Mr. Chicorelli deducted this $307,500 cost from his valuation of Lot 40. (*Id.* at 58).

Mr. Chicorelli's report treats the Ruppert estimate as a professional determination that there are thirty-two trees on Lot 40 that need to be replaced. (*See id.* at 56). However, the Ruppert estimate makes no such determination. The estimate appears to be a response to an email from Ms. Perkins, in which she provided a description of thirty-two trees and asked how much it would cost to replace them. The author of the Ruppert estimate expressly states that she has not been to the property, and at no point states an opinion that any of the thirty-two trees were in fact injured or needed to be replaced. (*Id.*).

Other than the Ruppert estimate, Mr. Chicorelli provides no basis for concluding that thirty-two trees need to be replaced. At his deposition, he suggested that the conclusion traces back to information from the Perkins. (ECF No. 168-2, at 14). Mr. Chicorelli's determination that the property suffered a $307,500

diminution in value is thus unmoored from any professional or expert reports.

Accordingly, Mr. Chicorelli's opinion that Lot 40 suffered a $307,500 diminution in value due to the cost of tree replacement is not based on sufficient data or facts to be reliable. As in *O'Conner*, his opinion assumes facts not in the record. Alternatively, it could be said that Mr. Chicorelli failed to apply his stated methodology because the facts on which he relied did not come from a professional source. Regardless of the framing, Rule 702 is ultimately concerned with reliability, and Mr. Chicorelli's conclusion as to tree replacement is not reliable. *See Nease*, 848 F.3d at 230.

In their opposition, the Perkins largely make the same error as Mr. Chicorelli, arguing that the report properly relied on the Ruppert estimate as a factual input. (ECF No. 187, at 2–3). The Perkins also point to "independent evidence" that trees were damaged: Ms. Perkins's testimony that two or three trees had fallen and that an unspecified number of trees "exhibited decline;" and the two quotes identifying four and nine trees, respectively, for removal. (*Id.* at 6). These sources of evidence, however, fall well short of demonstrating that thirty-two trees were damaged to the point of requiring replacement and were not referenced by Mr.

Chicorelli in his report as a basis for reaching the $307,500 amount.

For the foregoing reasons, Mr. Chicorelli will not be permitted to testify as to the cost of tree replacement or its impact on the property's valuation.

**C. Tree Removal and Insurance Costs**

The Compass Defendants also challenge Mr. Chicorelli's use of quotes from tree removal companies and an insurance company in his land valuation. They raise arguments under Rule 702 similar to those about the Ruppert estimate. (ECF No. 168, at 8–9). Furthermore, the Compass Defendants argue that Mr. Chicorelli fails to explain why the cost of removing trees or additional insurance would lead to an equivalent drop in the value of the property. (*Id.* at 10-12). This argument has force because Mr. Chicorelli, while invoking the "cost approach," does not explain why it would be appropriate here. His own definition states that the cost approach is most applicable to new or proposed "improvements" to property, or "when the improvements are so specialized that there is little or no sales data from comparable properties." (ECF No. 168-1, at 39). Beyond this general definition, Mr. Chicorelli does not explain why he applied the cost approach to tree removal or insurance costs.

These deficiencies arise from the same problem: tree removal and insurance costs are monetary damages that would be more easily and directly established through lay witness testimony. Ms. Perkins may testify as to tree removal and insurance costs she has incurred or will incur because of the easement. It is not necessary to have an expert provide that evidence. Accordingly, Mr. Chicorelli may not testify as to these costs.

## V. Motion to Preclude New Assertion for Punitive Damages (ECF No. 169)

In the joint pretrial order, the Perkins assert for the first time that they seek to recover punitive damages. (ECF 171, at 20). The Compass Defendants argue that it would "fundamentally unfair" to require them to defend against punitive damages this close to the beginning of trial.[2] (ECF No. 192, at 3). The Compass Defendants frame their arguments as a matter of amending the pleadings. (ECF Nos. 169, at 7; 192, at 3). However, because the Perkins seek a new form of relief, the appropriate analysis is under Fed.R.Civ.P. 54(c).

[2] Defendant District Title filed a motion in support of Compass Defendant's position. (ECF No. 194). Although the Perkins' original reference to punitive damages does not differentiate between the Defendants, they cannot recover punitive damages on their negligence claim against District Title, *see infra* part V-B, and their opposition brief limits their arguments to claims against the Compass Defendants. (ECF No. 180, at 3–4).

**A. Legal Standard**

> Federal Rule of Civil Procedure 54(c) (Rule 54(c)) commands that a trial court "shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed.R.Civ.P. 54(c). We have characterized Rule 54(c) as "a clarification of the fundamental point . . . that the relief to which a claimant is entitled is not limited to the relief it requested in its original demand for judgment." *Gilbane Bldg. v. Federal Reserve Bank of Richmond,* 80 F.3d 895, 901 (4th Cir. 1996). The theory underpinning Rule 54(c) is that "the dimensions of a lawsuit are measured by what is pleaded and proven, not what is demanded." *Thomas v. Pick Hotels Corp.,* 224 F.2d 664, 666 (10th Cir. 1955); *see also Gilbane Bldg.,* 80 F.3d at 900 ("[T]he essence of a claim remains its factual elements."). This is so because "[t]he pleadings serve only as a rough guide to the nature of the case." *Robinson v. Lorillard Corp.,* 444 F.2d 791, 803 (4th Cir. 1971). The only possibly relevant exception to Rule 54(c)'s mandate is if the Plaintiffs' failure to demand the appropriate alternative relief would be unfairly prejudicial [Defendants].[] *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424 [] (1975); *Gilbane Bldg.,* 80 F.3d at 901.

*Minyard Enters., Inc. v. Se. Chem. & Solvent Co.*, 184 F.3d 373, 385–86 (4th Cir. 1999) (footnote omitted).[3]

[3] Rule 54 was amended in 2007 "as part of the general restyling of the Civil Rules . . . . These changes are intended to be stylistic only." Fed.R.Civ.P 54, Advisory Comm. Notes. The current language of Rule 54(c) has only stylistic differences from the rule interpreted in *Minyard*.

*Minyard* thus sets out two requirements for granting relief not sought in the pleadings. First, plaintiffs must "have properly pleaded and proven allegations supporting an entitlement" to that relief. *Id.* at 386. Second, alternative relief should not be granted if the "failure to expressly demand relief in [the] complaint. . . unfairly prejudiced" the defendant. *Id.*

**B. Whether Plaintiffs Pleaded Entitlement to Punitive Damages**

Rule 54(c) is consistent with the "general rules of pleading" under the Federal Rule of Civil Procedure. *Gilbane Bldg.*, 80 F.3d at 901.

> [U]nder Rule 8(a)(2), a "statement of the claim" is sufficient "so long as a plaintiff colorably states facts which, if proven, would entitle him to relief," *Adams v. Bain,* 697 F.2d 1213, 1216 (4th Cir. 1982), and the claimant "need not set forth any theory or demand any particular relief for the court will award appropriate relief if the plaintiff is entitled to it on any theory." *New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20, 24–25 (4th Cir. 1963), *cert. denied,* 376 U.S. 963[] (1964).

*Gilbane Bldg.*, 80 F.3d at 900. A court should thus grant alternative relief under Rule 54(c) when "the allegations properly pled and proven support [that] theory and type of relief."[4] *Id.* at 901.

[4] Federal courts "look to Federal Rule of Civil Procedure 8(a)(3) rather than state law for the pleading requirements of a demand for [punitive damages]." *Marion v. Anchor Hocking, LLC,*

Under Maryland law, punitive damages are awarded to "further[] the historical purposes" of "punishment and deterrence." *Ellerin v. Fairfax Sav, F.S.B.*, 337 Md. 216, 228 (quoting *Owens-Illinois v. Zenobia*, 325 Md. 420, 454 (1992)). Punitive damages are thus only appropriate where the "the plaintiff has established that the defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud, *i.e.*, 'actual malice.'" *Id.* at 229 (quoting *Zenobia*, 325 Md. at 460); *see also Rios v. Winners Auto Sale, LLC*, No. 23-cv-1140-DKC, 2024 WL 1833136, at *7 (D.Md. Apr. 26, 2024). In other words, "punitive damages liability must be based on the defendant's conscious wrongdoing." *Ellerin*, 337 Md. at 233. The plaintiff "must establish by clear and convincing evidence the basis for an award of punitive damages." *Bowden v. Caldor, Inc.*, 350 Md. 4, 24 (1998) (quoting *Zenobia*, 325 Md. at 469).

Following these principles, the then named Court of Appeals of Maryland held in *Ellerin* that "the elements of the tort of fraud or deceit in Maryland, where the tort is committed by a defendant who knows that his representation is false, include the type of deliberate wrongdoing and evil motive that has traditionally justified the award of punitive damages." 337 Md. at 235. This

---

792 F.Supp.3d 629, 633 (D.Md. 2025) (quoting 5 Wright & Miller's Fed. Prac. & Proc. Section 1256 (4th ed.)).

is because "a person's actual knowledge that his statement is false, coupled with his intent to deceive another by means of that statement, constitute the 'actual malice' required for the availability of punitive damages." *Id.* at 240. Thus, punitive damages may be awarded in cases of knowing fraud. *See Mahoney v. iProcess Online, Inc.*, 681 F.Supp.3d 446, 451, 452 (D.Md. 2023) (awarding punitive damages where defendant "knowingly defrauded" plaintiffs); *CMH Mfg. v. Neil*, 620 F.Supp.3d 316, 324–331 (D.Md. 2022) (intentional fraud); *Quan v. TAB GHA F&B, Inc.*, No. 18-cv-3397-TDC, 2021 WL 4129115, at *3–4 (D.Md. Sep. 10, 2021), *report and recommendation adopted,* 2021 WL 6881288 (D.Md. Nov. 9, 2021) (fraudulent inducement and fraudulent misrepresentation). However, fraud actions based on the lesser scienter of recklessness or on a theory of constructive fraud do not support punitive damages. *Ellerin*, 337 Md. at 235–36.

This court previously held that Plaintiffs adequately pleaded claims of fraudulent misrepresentation, fraudulent concealment, and fraudulent conspiracy against the Compass Defendants. (ECF No. 145, at 33–37, 39–40 (denying summary judgment as to those claims). Plaintiffs allege that Mr. Fleisher "actively misrepresent[ed]" that the easement would only be needed if Lot 39 failed its percolation test, (ECF No. 1 ¶ 65); that the misstatements "were made to ensure that the Perkins would not

cancel their purchase of Lot 40," (*id.* ¶ 67); and that Mr. Fleisher understood that revealing to the Plaintiffs that the easement "was not the unlikely prospect they had been told" would risk Plaintiffs backing out of the deal, (*id.* ¶ 83). Through these allegations of knowing fraud, Plaintiffs have properly pleaded entitlement to punitive damages.

**C. Whether the Compass Defendants Would Be Unfairly Prejudiced**

Although Rule 54(c) contains no exceptions to granting alternative relief, "[c]ase law has carved out an exception where alternative relief would be unfairly prejudicial." *Gilbane Bldg.*, 80 F.3d at 901 n.2 (citing *Albemarle*, 422 U.S. at 424). This is because parties must have "the opportunity to make a 'realistic appraisal of the case, so that [their] settlement and litigation strategy [could be] based on knowledge and not speculation.'" *Atl. Purchasers, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 717 (4th Cir. 1983) (quoting Fed.R.Civ.P. 26(b)(2), Advisory Committee Notes to 1970 amendments).

The Compass Defendants' assertions of unfairness fall short here. For purposes of Rule 54(c), unfair prejudice often arises when new relief is sought post-trial. *Compare Atl. Purchasers*, 705 F.2d at 714–15 & n.2, 717 (unfair prejudice to award treble damages under a North Carolina statute when that statute was not raised or referenced until after the jury had rendered a verdict)

*with Gilbane Bldg.*, 80 F.3d at 899, 901–02 (no unfair prejudice in seeking treble damages under the same statute because they were raised at the beginning of fact-finding hearings); *and Minyard*, 184 F.3d at 373 (no unfair prejudice where alternative relief was sought for the first time in plaintiff's pretrial motions). Here, Plaintiffs raised the prospect of punitive damages when it circulated a draft of the pretrial order on September 25, 2026, about seven weeks before the scheduled start of trial. (*See* ECF No. 169, at 7).

Moreover, there is no unfair prejudice when a new form of relief relies on elements already at issue in the case. In *Robinson*, the Fourth Circuit held there was no unfair prejudice from a request for back pay raised for the first time post-trial, reasoning that "because the obligation to provide back pay stems from the same source as the obligation to reform the seniority system, any general defenses relevant to the back pay award were equally relevant to the suit for injunctive relief." 444 F.2d at 803. Similarly, in *In Re Landbank Equity Corp.*, the court affirmed a bankruptcy court's imposition of punitive damages on a theory of fraud not raised at trial when the pleaded statutory claim required the same showing of willful and malicious conduct. 83 B.R. 362, 376–77 (E.D.Va. 1987).

As explained above, establishing entitlement to punitive damages involves similar elements as are at issue in the fraud claims. Any defenses relevant to the fraud claims will be equally relevant to the request for punitive damages. *See In re Landbank*, 83 B.R. at 377 ("Moreover, although Appellants claim that they would have tried the case differently had they known that punitive damages might be awarded, they fail to specify what this alternative trial tactic would have been."). Accordingly, the Compass Defendants have not shown unfair prejudice. Plaintiffs may therefore seek punitive damages for their fraud claims against the Compass Defendants.

**VI. Conclusion**

For the foregoing reasons, the Compass Defendants' motion to exclude the testimony of Mr. Trujillo will be denied as moot; the motion to exclude the testimony of Mr. Hartman will be granted; the motion to preclude the testimony of Mr. Chicorelli with respect to tree damage and insurance will be granted; and the motion to preclude the assertion for punitive damages will be denied. A separate order will follow.

/s/

DEBORAH K. CHASANOW
United States District Judge